GHIDOTTI v BARBER

Docket No. 109112. Argued October 7, 1998 (Calendar No. 11). Decided
December 28, 1998.

The Calhoun Circuit Court, James C. Kingsley, J., granted James A.
Ghidotti physical custody of his son, James A. Ghidotti, Jr., and
ordered the Calhoun County Friend of the Court to conduct a child
support review of the support obligation of Brenda Barber, the
child's mother. Although Ms. Barber was receiving Aid to Families
with Dependent Children for two minor daughters from a previous
marriage, the friend of the court deemed her to be voluntarily
unemployed, calculated an imputed income equal to what she
would earn if she worked full time at a minimum wage job, and
recommended she pay weekly support. The court adopted the rec-
ommendation. The Court of Appeals, WEAVER, P.J., and MACKENZIE
and SAWYER, JJ., denied leave to appeal in an unpublished order
(Docket No. 176051). The Supreme Court, in lieu of granting leave
to appeal, remanded the matter to the Court of Appeals for consid-
eration as on leave granted. 449 Mich 861 (1995). On remand, the
Court, GRIBBS, P.J., and MARKEY, J. (T. G. KAVANAGH, J., not participat-
ing), affirmed in an opinion per curiam, holding that the fact that a
party receives an AFDC grant is irrelevant when determining
whether a parent is voluntarily unemployed and the amount of
child support that a voluntarily unemployed noncustodial parent
should pay for the benefit of the child. 222 Mich App 373 (1997)
(Docket No. 187106). The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
MALLETT, and Justices CAVANAGH and KELLY, the Supreme Court held:

The statutorily authorized Michigan Child Support Formula Man-
ual prohibits the imputation of means-tested public assistance ben-
efits as income. While a trial court may enter an order of support
that deviates from the formula, it may not do so without setting
forth in writing or on the record why following the formula would
be unjust or inappropriate.

1. A trial court, in determining the appropriate amount of child
support in a particular case, must follow the guidelines set forth by
the Friend of the Court Bureau, which has published the Michigan
Child Support Formula Manual in accordance with state and fed-

eral law. The manual clearly and unequivocally prohibits the imputation of income to a payee or payer parent who is receiving means-tested income such as AFDC. When a trial court deviates from this formula, it must set forth in writing why following the formula would be unjust or inappropriate. This the trial court did not do. The Court of Appeals erred in affirming the trial court's order.

2. The Court of Appeals approval of imputation of income to a parent in the defendant's situation is based on a misunderstanding of the applicable statutes and case law. MCL 552.519(3)(a)(vi); MSA 25.176(19)(3)(a)(vi) requires that the child support formula be based on the needs of the child and the actual resources of each parent. In determining a parent's ability to pay child support, the court must evaluate factors, such as employment history, education and skills, available work opportunities, diligence in trying to find work, the defendant's personal history, assets, health and physical ability, and availability for work, so as to ensure that any imputation of income is based on an actual ability and likelihood of earning the imputed income. Imputation is not appropriate where a payee or payer source of income is means-tested income such as AFDC. In allowing imputation of income to the defendant, despite the fact that her sole source of income was means-tested public assistance, the trial court gave no consideration to any of these factors, except the defendant's medical condition. The Court of Appeals erroneously approved the trial court's failure to follow the requirements established for any deviation from the child support formula.

Reversed and remanded.

Justice BOYLE, joined by Justices WEAVER and TAYLOR, dissenting, stated that the last provision of subsection I of the Child Support Guidelines Manual is void, and the categorical preclusion against imputing income to means-tested benefit recipients cannot be given effect. Further, the record supports the finding of a voluntarily unexercised ability to earn, and remand is both unnecessary and incorrect.

In order to impute income to a parent, the friend of the court must investigate all relevant facts, and, if it finds an unexercised ability to earn an income, make a recommendation on the basis of actual income and an alternative recommendation on the basis of actual plus imputed income. In addition, the record must disclose the factors on which the imputation of income is based. In this case, the friend of the court and the trial court fully complied with these mandates.

*Violet K. Hinton* for the plaintiff-appellee.

*Jeanne M. McGuire* and *Michael O. Nelson* for the defendant-appellant.

Amici Curiae:

*Anne N. Schroth* for Legal Services Association of Michigan and Women Lawyers Association of Michigan.

BRICKLEY, J. This appeal raises the question whether the custodial mother of two minor children, ages fourteen and thirteen, whose sole source of income is means-tested public assistance,[1] can be deemed to be voluntarily unemployed and thereby have an income imputed to her as the basis for her child support obligation to a noncustodial third child. The statutorily authorized Michigan Child Support Formula Manual prohibits the imputation of means-tested public assistance benefits as income. While a trial court may enter an order of support that deviates from the formula, it may not do so without setting forth in writing or on the record why following the formula would be unjust or inappropriate.[2] Additionally, this Court has required the trial court to evaluate a num-

---

[1] "Means tested public assistance" is used throughout this opinion to refer to federal welfare benefits paid to eligible low-income individuals or families.

[2] MCL 722.717(3); MSA 25.497(3) provides that the court may enter an order of support that varies from that mandated by the guidelines, but only if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:

   (a) The support amount determined by application of the child support formula.

   (b) How the support order deviates from the child support formula.

ber of factors in determining the actual ability and likelihood of earning the imputed income. *Sword v Sword*, 399 Mich 367; 249 NW2d 88 (1976). The Michigan Child Support Formula Manual also requires the evaluation of certain equitable factors when deciding to impute income. In the instant case, the trial court failed to comply with these requirements. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for a new calculation of the support order.

I

Plaintiff James Ghidotti and defendant Brenda Barber are the parents of James Allen Ghidotti, Jr., born November 30, 1987. The parties were never married. Judge Kingsley of the 37th Circuit Court granted physical custody of James Jr. to his father, the plaintiff, on May 18, 1993.

Defendant has custody of two minor daughters, ages fourteen and thirteen, from a previous marriage. The father of the two girls, defendant's ex-husband, is incarcerated and does not pay child support. At the time this case was before the trial court, defendant and her daughters received $356 a month in Aid to Families with Dependent Children benefits. At the same time, plaintiff earned approximately $370 a week from employment.

Pursuant to an order from the trial court, the friend of the court for Calhoun County conducted a child

---

(c) The value of property or other support awarded instead of the payment of child support, if applicable.

(d) The reasons why application of the child support formula would be unjust or inappropriate in the case.

support review of defendant's obligation to her non-custodial son, James Jr. The friend of the court prepared two recommendations regarding defendant's child support obligations.[3] The first recommendation, which was based on defendant's actual income, set the support level at $0.00. When calculating the second recommendation, the friend of the court determined that defendant did not suffer from any condition or restriction that would preclude her from obtaining gainful employment. Accordingly, the friend of the court deemed defendant to be voluntarily unemployed and calculated an imputed income for defendant equaling $170 a week. The imputed income equaled what defendant would earn if she worked at a minimum wage job for forty hours a week. The second recommendation, which was based on defendant's actual income, plus her imputed income, set defendant's child support obligation at $33 a week;

---

[3] Pursuant to 42 USC 667(b)(2), the State Court Administrative Office Friend of the Court Bureau developed the Michigan Child Support Formula Manual, which provides, in part:

Imputation of income is treating a party as having income or resources that the party does not actually have. This usually occurs in cases where a party voluntarily reduces his/her income.

The determination as to the appropriateness of imputation in a particular case is a judicial one. In all cases in which the Friend of the Court investigation shows voluntary reduction of income or where there is voluntary unexercised ability to earn, the Friend of the Court *shall* make two recommendations: one is based on actual income and the other is based on actual plus imputed income. The recommendation should also take into account the possible inclusion of a child care recommendation where imputation would make that issue relevant. The recommendation shall include the basis for imputation and the basis of the amount imputed. [Michigan Child Support Formula Manual, tenth rev, p 8 (emphasis in original).]

this amount included $22 a week for child support and $11 a week for child care.

On May 16, 1994, the trial court heard testimony regarding the child support review. Defendant argued that, because she was receiving AFDC and food stamp support for her other two children, she could not be required to pay child support. The court disagreed and set the level of child support at $33 a week, imputing income to defendant and adopting the second calculation of the friend of the court.

Defendant appealed this ruling, but the Court of Appeals denied leave. This Court remanded the case to the Court of Appeals as on leave granted. 449 Mich 861 (1995). The Court of Appeals affirmed the trial court's award of child support at the rate of $33 a week, holding that

> the fact that a party receives an AFDC grant is irrelevant when determining whether a parent is voluntarily unemployed and the amount of child support that a voluntarily unemployed noncustodial parent will pay for the benefit of the noncustodial child. [222 Mich App 373, 380; 564 NW2d 141 (1997).]

Defendant appealed the ruling of the Court of Appeals, and this Court granted leave on April 1, 1998. 456 Mich 959.

II

At the time this case was decided, defendant was a recipient of AFDC, which the federal welfare program was called at that time. The Personal Responsibility and Work Opportunity Reconciliation Act, Pub L 104-193, 110 Stat 2105 (codified as 42 USC 601-1788), replaced AFDC with Temporary Assistance for Needy

Families (TANF), as part of the federal welfare reform
program enacted in 1996. Because the Michigan Fam-
ily Independence Agency has elected to use TANF
funds as AFDC funds were used previously, to provide
cash assistance to needy families with minor children,
the analysis of defendant's situation remains the
same.

The stated purpose of TANF can be found at 42 USC
601(a), which provides:

> In general. The purpose of this part [42 USC 601 *et seq.*]
> is to increase the flexibility of States in operating a program
> designed to—
>
> (1) provide assistance to needy families so that children
> may be cared for in their own homes or in the homes of
> relatives;
>
> (2) end the dependence of needy parents on government
> benefits by promoting job preparation, work, and marriage;
>
> (3) prevent and reduce the incidence of out-of-wedlock
> pregnancies and establish annual numerical goals for
> preventing and reducing the incidence of these pregnancies;
> and
>
> (4) encourage the formation and maintenance of two-
> parent families.

In order to receive federal funds under the TANF
program, a state is required to "establish guidelines
for child support award amounts within the State." 42
USC 667(a). This statute also requires that

> [t]here shall be a rebuttable presumption, in any judicial or
> administrative proceeding for the award of child support,
> that the amount of the award which would result from the
> application of such guidelines is the correct amount of child
> support to be awarded. A written finding or specific finding
> on the record that the application of the guidelines would
> be unjust or inappropriate in a particular case, as deter-
> mined under criteria established by the State, shall be suffi-

cient to rebut the presumption in that case. [42 USC 667(b)(2).]

The Legislature complied with these requirements when it enacted MCL 722.717(3); MSA 25.497(3), stating that "the court shall order support in an amount determined by application of the child support formula developed by the state friend of the court bureau."[4] The statute goes on to state that the court may enter an order of support that varies from that mandated by the guidelines, but only if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record the following:

(a) The support amount determined by application of the child support formula.

(b) How the support order deviates from the child support formula.

(c) The value of property or other support awarded instead of the payment of child support, if applicable.

(d) The reasons why application of the child support formula would be unjust or inappropriate in the case. [MCL 722.717(3); MSA 25.497(3).]

The Friend of the Court Bureau has written, distributed, and frequently revised the Michigan Child Sup-

---

[4] This legislative mandate is also set forth in MCL 552.519; MSA 25.176(19), which creates the Friend of the Court Bureau as a part of the State Court Administrative Office. The friend of the court is required to "[d]evelop and recommend guidelines for conduct, operations, and procedures of the office and its employees," including a "formula to be used in establishing and modifying a child support amount and health care obligation. The formula shall be based upon the needs of the child and the actual resources of each parent." MCL 552.519(3)(a)(vi); MSA 25.176(19)(3)(a)(vi).

port Formula Manual pursuant to this legislative mandate.

The relevant language of the manual states:

> Imputation is *not* appropriate where:
>
> 1. A payee/payer source of income is a means tested income such as Temporary Assistance to Needy Families (TANF), Family Independence Payments (FIP) (formerly AFDC), Food Stamps, Supplemental Security Income (SSI), etc. [Michigan Child Support Formula Manual, tenth rev, p 8 (emphasis in the original).]

III

In reaching its decision in the present case, the Court of Appeals recognized the prohibition contained in the manual against imputation of means-tested public assistance benefits as income.[5] However, while acknowledging that defendant had no source of income other than AFDC and that this could not be counted as income for the purpose of a child support calculation, the Court of Appeals upheld the trial court's decision to deem defendant as voluntarily unemployed and thereby able to work:

> [The court] apparently viewed [defendant] as it should and does view all unemployed yet employable noncustodial parents who, for one reason or another, have no job and claim an inability to financially support a child. [222 Mich App 377-378.]

The trial court's decision that defendant was employable was based on the finding of the Calhoun County Friend of the Court's investigation that she "suffered

---

[5] 222 Mich App 378.

from no condition or restriction that would preclude her from obtaining gainful employment." *Id.* at 375.

The Court of Appeals approval of imputation of income to a parent in defendant's situation is based on a misunderstanding of the applicable statutes and case law.

A

According to the applicable statutes, the child support formula "shall be based upon the needs of the child and the actual resources of each parent." MCL 552.519(3)(a)(vi); MSA 25.176(19)(3)(a)(vi). In applying this mandate, cases have broadened the limits of "actual resources" to include certain payers' unexercised ability to pay. See, e.g., *Rohloff v Rohloff*, 161 Mich App 766; 411 NW2d 484 (1987) (a trial court may order child support where a party voluntarily reduces income and the trial court concludes the party has the ability to earn an income); *Heilman v Heilman*, 95 Mich App 728; 291 NW2d 183 (1980) (a trial court may properly take into consideration a parent's ability to work and earn money in setting the appropriate child support award). However, in allowing income imputation to a payer whom the court finds to have an unexercised ability to pay, this Court has required specific findings by the trial court. *Sword v Sword, supra* (in determining a parent's ability to pay child support, the court must evaluate a number of factors, such as employment history, education and skills, available work opportunities, diligence in trying to find work, the defendant's personal history, assets, health and physical ability, and availability for work); *Rohloff, supra* (refers to *Sword* criteria for determina-

tion of ability to pay child support in voluntary reduction of income case).

The requirement that the trial court evaluate criteria such as those listed in *Sword* is essential to ensure that any imputation of income is based on an actual ability and likelihood of earning the imputed income. Any other rule would be pure speculation and a clear violation of the requirement that child support be based upon the actual resources of the parents. MCL 552.519(3)(a)(vi); MSA 25.176(19)(3)(a)(vi). Moreover, the manual requires that the decision to impute income be based on the evaluation of "among other equitable factors," the following eight factors:

1. Prior employment experience;
2. Education level;
3. Physical and mental disabilities;
4. The presence of children of the marriage in the party's home and its impact on the earnings of the parties;
5. Availability of employment in the local geographical area;
6. The prevailing wage rates in the local geographical area;
7. Special skills and training; or
8. Whether there is any evidence that the party in question is able to earn the imputed income. [Manual at 8.]

The manual also emphasizes that "imputation is *not* appropriate where . . . [a] payee/payer source of income is a means tested income such as Temporary Assistance to Needy Families (TANF), Family Independence Payments (FIP) (formerly AFDC), Food Stamps, Supplemental Security Income (SSI), etc. . . . " Manual at 8.

In its decision to allow imputation of income to defendant, despite the fact that her sole source of income was means-tested public assistance, the trial court gave no consideration, except as to defendant's medical condition, to any of the factors required by *Sword* or the manual. The Court of Appeals erroneously approved the trial court's failure to follow the requirements established by the child support formula for any deviation from the formula.

The Legislature has determined that Michigan courts "shall order support in an amount determined by application of the child support formula developed by the state friend of the court bureau." MCL 722.717(3); MSA 25.497(3).[6] In the absence of circumstances that make a determination "unjust or inappropriate," the court may not deviate from the formula. *Id.* The formula provides that imputation is not appropriate where the payee/payer source of income is means-tested income. The trial court in this case made no record of any circumstances, nor have the parties stated any, that would lead to the conclusion that the amount of child support as indicated by the manual is "unjust or inappropriate."

B

The Court of Appeals, in affirming the trial court's award of child support in the instant case, largely ignored the mandate of the manual and the state and federal laws that require courts to follow the manual

---

[6] The same provision is included in other relevant statutes, such as the divorce act, MCL 552.15(2); MSA 25.95(2); the Family Support Act, MCL 552.452(2); MSA 25.222(2); the emancipation of minors and rights of parents act, MCL 722.3(3); MSA 25.244(3); and the Child Custody Act, MCL 722.27(2); MSA 25.312(7)(2).

when setting the amount of child support. See 222 Mich App 378-379. The Court of Appeals noted the manual's statement that imputation is "not appropriate where '[a] payee/payer source of income is a means tested income such as Aid for Families with Dependent Children, General Assistance, Food Stamps, and Supplemental Security Income.'" *Id.* at 378. The Court of Appeals then stated that "[t]his is consistent with the child support guidelines' statement that means-tested sources of income 'should *not* be considered as income to either parent for the purpose of determining child support.'" *Id.* at 378-379 (emphasis in original). However, the Court of Appeals also found that

> although at first glance the language of MCL 400.63; MSA 16.463 and MCL 552.602(c); MSA 25.164(2)(c) may appear to protect defendant from child support obligations because her only income is AFDC, neither statute prohibits imputing wage income to a voluntarily unemployed parent who receives AFDC *as long as* that parent is not required to satisfy the child support order from the AFDC grant. [222 Mich App 380 (emphasis in original).]

In fact, the Court of Appeals interpretation is not logically consistent, because imputing fictitious income to a parent receiving AFDC would defeat the purpose of ignoring AFDC income in support calculations.

The Court of Appeals found that "[t]he manual contains no substantive right liberating a noncustodial parent who receives AFDC from all child support obligations. If this were the case, we would find statutory authorization for this exclusion, but none exists." *Id.* at 379. This argument cannot be supported. The manual may not contain this "substantive right," *id.*, but it

unambiguously prohibits imputation of income to a parent (custodial or otherwise) who receives AFDC. Manual at 10-11. Furthermore, the Legislature statutorily delegated the authority to draft the manual to the friend of the court.[7] This delegation was pursuant to federal mandate.[8] "An agency's authority to adopt rules is typically provided for in the statute creating the agency and vesting it with certain powers," and that "[r]ulemaking authority may also be inferred from other statutory authority granted to an agency." Bienenfeld, Michigan Administrative Law (2d ed), ch 4, pp 18-19. This Court has said that "what is essential to a valid . . . Michigan 'rule' is: a reasonable exer-

---

[7] In defining the creation, powers and duties of the Friend of the Court Bureau, MCL 552.519; MSA 25.176(19) provides:

(3) The bureau shall do all of the following:

(a) Develop and recommend guidelines for conduct, operations, and procedures of the office and its employees, including, but not limited to, the following:

\*          \*          \*

(vi) A formula to be used in establishing and modifying a child support amount and health care obligation. The formula shall be based upon the needs of the child and the actual resources of each parent. The formula shall establish a minimum threshold for modification of a child support amount. The formula shall consider the child care and dependent health care coverage costs of each parent.

[8] 42 USC 667(a) provides:

Establishment of guidelines; method

Each State, as a condition for having its State plan approved under this part [42 USC 651 et seq.], must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts.

cise of legislatively delegated power, pursuant to proper procedure."[9] To say that a rule in the manual needs "statutory authorization" in order to exist is to defeat the purpose of the legislative delegation.

The Court of Appeals then opined that, despite the defendant's lack of any income other than AFDC and the fact that such income is "absolutely inalienable" under Michigan law, MCL 400.43(1); MSA 16.463(1), the defendant could be assessed child support. The Court of Appeals held that defendant would not be required to pay the assessed child support while her sole source of income was AFDC, but the unpaid weekly child support would accumulate in arrears.[10] 222 Mich App 380-384. This view cannot overcome the language of 42 USC 667, MCL 722.717(3); MSA 25.497(3), and the manual. These controlling statutes and regulations, read together (as by their terms they must be), prohibit the imputation of income to a parent receiving "means tested income" unless the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record the four pieces of information[11] required by MCL 722.717(3); MSA 25.497(3).

---

[9] *Michigan Farm Bureau v Workmen's Compensation Bureau*, 408 Mich 141, 150; 289 NW2d 699 (1980).

[10] The defendant is now employed and paying the assessed child support. This case is saved from mootness by the fact that substantial arrearage built up during the period when the defendant and her family were subsisting on AFDC alone.

[11] (a) The support amount determined by application of the child support formula.

(b) How the support order deviates from the child support formula.

(c) The value of property or other support awarded instead of the payment of child support, if applicable.

CONCLUSION

The relevant state and federal statutes require the trial court, in determining the appropriate amount of child support in a particular case, to follow the guidelines set forth by the state agency with the authority to promulgate such guidelines. In Michigan, that agency is the Friend of the Court Bureau, which has published the Michigan Child Support Formula Manual in accordance with state and federal law. The manual clearly and unequivocally prohibits the imputation of income to a payee or payer parent who is receiving means-tested income such as AFDC. When a trial court deviates from this formula, it must set forth in writing why following the formula would be "unjust or inappropriate." This the trial court did not do. The Court of Appeals erred in affirming the trial court's order.

Therefore, the decision below is reversed, and this case is remanded for a calculation of a support order consistent with this opinion.

MALLETT, C.J., and CAVANAGH and KELLY, JJ., concurred with BRICKLEY, J.

BOYLE, J. (*dissenting*). The majority holds that the last provision of subsection I[1] of the Child Support Guidelines Formula Manual categorically precludes

---

(d) The reasons why application of the child support formula would be unjust or inappropriate in the case.

[1] Imputation is *not* appropriate where:

1. A payee/payer source of income is a means tested income such as Temporary Assistance to Needy Families (TANF), Family Independence Payments (FIP) (formerly AFDC), Food Stamps, Supplemental Security Income (SSI), etc.

imputation of income to defendant simply because she is a recipient of means-tested benefits. The majority fails to recognize that the provision is inconsistent with parents' statutory obligation to support their children. The provision also exceeds the legislatively delegated authority of the manual, because it conflicts with the statutory mandate that the manual, and hence an award of child support, be based on "the actual resources" of the parent. I would hold that the last provision of subsection I is void, and the categorical preclusion against imputing income to means-tested benefit recipients cannot be given effect.

Were all this not sufficient, the Court also imposes a *Sword v Sword*[2] analysis on the inquiry, although *Sword* applies only in contempt proceedings. The Court creates a nonexistent dispute regarding whether imputation of income was appropriate as a matter of fact, an argument long ago waived by defendant. The record supports the finding of a voluntarily unexercised ability to earn, and remand is unnecessary and incorrect. The Court of Appeals should be affirmed.

I

This appeal involves whether income may be imputed to a means-tested benefit recipient who has been found by the trial court to have a "voluntary unexercised ability to earn." Relevant to that inquiry is the Child Support Guidelines Manual, subsection I, which enumerates both the responsibilities for the friend of the court in making the determination

---

[2] 399 Mich 367; 249 NW2d 88 (1976).

whether to impute income and the relevant considerations involved. Subsection I provides in relevant part:

> The determination as to the appropriateness of imputation in a particular case is a judicial one. In all cases in which the Friend of the Court investigation shows voluntary reduction of income or where there is voluntary unexercised ability to earn, the Friend of the Court *shall* make two recommendations: one is based on actual income and the other is based on actual plus imputed income. The recommendation should also take into account the possible inclusion of a child care recommendation where imputation would make that issue relevant. The recommendation shall include the basis for imputation and the basis of the amount imputed.
>
> In considering a party's unexercised ability to earn, the Friend of the Court shall consider among other equitable factors the following criteria:
>
> 1. Prior employment experience;
>
> 2. Educational level;
>
> 3. Physical and mental disabilities;
>
> 4. The presence of children of the marriage in the party's home and its impact on the earnings of the parties;
>
> 5. Availability of employment in the local geographical area;
>
> 6. The prevailing wage rates in the local geographical area;
>
> 7. Special skills and training; or
>
> 8. Whether there is any evidence that the party in question is able to earn the imputed income.

This imputation provision must be applied equally to payers and payees and to men and women. Imputation is *not* appropriate where:

> 1. A payee/payer source of income is a means tested income such as Temporary Assistance to Needy Families (TANF), Family Independence Payments (FIP) (formerly AFDC), Food Stamps, Supplemental Security Income (SSI), etc.

The obligations of the friend of the court listed in the first paragraph of subsection I are consistent with the friend of the court's statutory obligation "to investigate *all* relevant facts" regarding child support. MCL 552.505(1)(e); MSA 25.176(5)(1)(e) (emphasis added). They are likewise consistent with MCL 552.517(3); MSA 25.176(17)(3) which states:

> The office shall use the child support formula developed by the bureau under section 19 in calculating the child support award. If the office determines from the facts of the case that application of the child support formula would be unjust or inappropriate, *or that income should not be based on actual income earned by the parties*, the office shall prepare a written report that includes all of the following:
>
> (a) The support amount, based on actual income earned by the parties, determined by application of the child support formula and all factual assumptions upon which that support amount is based.
>
> (b) An alternative support recommendation and all factual assumptions upon which the alternative support recommendation is based.
>
> (c) How the alternative support recommendation deviates from the child support formula.
>
> (d) The reasons for the alternative support recommendation.
>
> (e) All evidence known to the friend of the court that the individual is or is not able to earn the income imputed to him or her. [Emphasis added.]

Thus, under both the guidelines and the statute, in order to impute income to a parent, the friend of the court *shall* investigate all relevant facts, and, if it finds an unexercised ability to earn an income, *shall* make one recommendation on the basis of actual income and an alternative recommendation on the basis of actual plus imputed income. In addition, the

record must disclose the factors on which the imputation of income is based.

In this case, the friend of the court and the trial court fully complied with these mandates. As the majority acknowledges, the friend of the court made two recommendations to the trial judge. The first recommendation, based only on "actual income," was that defendant not be required to pay any child support (because "actual income" was zero).[3] The second recommendation, based on "imputed income" of $170 a week at a minimum wage job, was that defendant should pay $33 a week in support of the child who resided with his father.[4] The friend of the court based the imputation of income on the fact that it could find no reason why defendant was not capable of working a minimum wage job for forty-hours a week, and that it found defendant's proffered explanations for failing to gain employment unbelievable. The factual findings of the trial court support this conclusion. As the circuit court found:

> Although Ms. Barber has a limited work history, once recovered from her surgery, there appears to be no physical or mental reason preventing her from working full time. Her children are getting older; they are in school full time;

---

[3] In addition to satisfying the mandate of § 517 and subsection I, this first recommendation also satisfies the initial directive of the manual that requires the exclusion of AFDC benefits from the calculation of net income (subsection G).

[4] All parties concede, and correctly so, that this second recommendation was not based even in part on the AFDC benefits received by defendant, nor did this recommendation require defendant to satisfy the support obligation by the use of her AFDC benefits. Therefore, this second recommendation also comports with subsection G. For the same reasons, the court's support order in this case is consistent with MCL 400.63(1); MSA 16.463(1).

and if her one daughter had special needs, she is not now receiving any type of therapy.

I believe Ms. Barber has the ability to work; that there are unskilled jobs available at minimum wage or greater; and that she has no compelling personal and/or family needs which would keep her from obtaining some type of employment.

Defendant does not challenge the factual basis for the order of child support.

Notwithstanding the fact that the friend of the court and the trial court followed the specific requirements of the manual and of the relevant statutes in imputing income to defendant, the majority holds that income may not be imputed without *deviating* from the manual. This conclusion is based on the last provision of subsection I quoted above, which states:

Imputation is *not* appropriate where:

1. A payee/payer source of income is a means tested income such as Temporary Assistance to Needy Families (TANF), Family Independence Payments (FIP) (formerly AFDC), Food Stamps, Supplemental Security Income (SSI), etc.

The plain reading of this provision is a categorical preclusion against imputing income in all cases in which the defendant is a recipient of means-tested benefits. As the Court of Appeals noted, such a categorical preclusion conflicts with numerous statutory provisions that must be construed in pari materia with the manual, including MCL 722.712(a); MSA 25.492(a), MCL 552.519(3)(a)(vi); MSA 25.176(19)(3)(a)(vi), and with MCL 722.717(3); MSA 25.497(3).

The provision of subsection I at issue is, for example, contradictory to the statutory obligation of parents to support their children. MCL 722.712(a); MSA 25.492(a). The mandate of the *guidelines* is that parents receiving AFDC benefits must be excused from their *statutory* obligation to support their children without consideration of their voluntarily unexercised ability to earn. Upholding such a mandate impermissibly grants the Friend of the Court Bureau the power to act in derogation of the statute.

Likewise, analysis of MCL 552.519(3)(a)(vi); MSA 25.176(19)(3)(a)(vi) demonstrates that the Friend of the Court Bureau has exceeded its legislatively delegated authority in promulgating the categorical preclusion against imputing income to means-tested benefits recipients. This statute is the "enabling" statute that requires the friend of the court to develop and recommend a child support formula. The statute states that "the formula shall be based upon the needs of the child and the *actual resources* of each parent." (Emphasis added.) The majority acknowledges that the term "actual resources" includes "certain payers' unexercised ability to pay." *Ante* at 198. It fails to perceive, however, that the practice of imputing income serves to account for the "actual resources" of those individuals who could presently earn an income, but who do not. Otherwise stated, a parent's voluntarily unexercised ability to earn, when it exists, is among the "actual resources" of the parent.

In subsection I, the manual recognizes that the award of child support is a judicial determination, but then, in the provision at issue, directs the trial court to ignore defendant's voluntarily unexercised ability

to earn when the defendant receives means-tested
benefits. It follows that in that subset of cases in
which there is a means-tested benefit recipient, this
provision directs the court to base its order of sup-
port *not* on the actual resources of the parents or
even the needs of the child, but on the coincidental
fact that defendant receives public assistance. Quite
simply, a provision of the manual that requires such a
result in the absence of deviation from the manual is
contrary to § 519, is therefore without legislative
authority, and is void.[5] For this reason, the categori-

---

[5] The provision of subsection I at issue also conflicts with the obliga-
tions of the friend of the court under MCL 552.505; MSA 25.176(5) and
with the obligations imposed on the friend of the court under subsection I
described above. To give effect to the provision of subsection I at issue
renders these mandatory obligations of the friend of the court completely
meaningless in the subset of cases in which the defendant receives AFDC.
Even were the friend of the court to complete its obligations to investi-
gate all relevant facts and to make two separate recommendations, the
trial court would be presumptively required to ignore the factual findings
of the friend of the court because of the defendant's AFDC recipient status.

Furthermore, it is clear that the Legislature contemplates situations in
which income may be imputed to parents without deviating from the
guidelines. MCL 552.517(3); MSA 25.176(17)(3), provides:

   The office shall use the child support formula developed by the
   bureau under section 19 in calculating the child support award. If
   the office determines from the facts of the case that application of
   the child support formula would be unjust or inappropriate, *or that
   income should not be based on actual income earned by the par-
   ties*, the office shall prepare a written report that includes all of the
   following:

     (a) The support amount, based on actual income earned by the
   parties, determined by application of the child support formula and
   all factual assumptions upon which that support amount is based.

     (b) An alternative support recommendation and all factual
   assumptions upon which the alternative support recommendation
   is based.

     (c) How the alternative support recommendation deviates from
   the child support formula.

     (d) The reasons for the alternative support recommendation.

cal preclusion against imputing income to means-tested benefit recipients cannot be given effect.

In sum, the manual states that AFDC benefits may not be counted as "actual income." Consistent with statutory directive, however, the manual created by the Friend of the Court Bureau cannot preclude imputation of income on the basis of defendant's voluntarily unexercised ability to earn, when that unexercised ability is among defendant's actual resources. As contemplated by statute, defendant's voluntary unexercised ability to earn is the basis for imputation of income in this case. I would affirm the decision of the Court of Appeals that defendant is required to pay child support because she is a voluntarily unemployed individual, and that defendant will not be required to pay support as long as her "sole source of income" is AFDC, but that the amount will accrue during that time.

II

To the extent that the majority transposes the *Sword v Sword* factors, or the eight factors contained

---

(e) All evidence known to the friend of the court that the individual is or is not able to earn the income imputed to him or her. [Emphasis added.]

This statutory language clearly distinguishes between cases in which deviation will be appropriate and cases in which imputation of income will be appropriate. Furthermore, there is nothing in this section that suggests that subsection 3 does not apply to cases in which a parent is receiving means-tested benefits. To the contrary, MCL 552.517(3); MSA 25.176(17)(3) clearly contemplates that review will be had under MCL 552.517; MSA 25.176(17) in cases in which "a child is being supported in whole or in part by public assistance . . . ." The majority's holding that the courts must *deviate* from the manual in order to impute income to an AFDC recipient is not consistent with legislative intent.

in the manual[6] into the determination it requires on remand, it must first be observed that the order before us is not an order of contempt. In *Sword*, Justice COLEMAN was discussing inability to pay as a defense in a civil contempt proceeding resulting from an "order of the court resulting from a previous trial . . . ." *Id.* at 382. The factors cited by the majority were "suggest[ed as] some possible lines of inquiry" to determine whether an individual should be held in contempt of court for failure to comply with the terms of a support order. *Id.* at 378. The initial order of support and findings of contempt are obviously distinct. Second, the guidelines incorporate virtually all Justice COLEMAN's suggestions as considerations in imputing income. Third, the defendant did not assert error on the basis of inadequate ground for

---

[6] The eight factors listed in the manual are found in subsection i, reproduced in relevant part at page 206. The ten factors cited in *Sword* are nearly identical:

1. Employment history, including reasons for any termination of employment.

2. Education and skills.

3. Work opportunities available.

4. Diligence employed in trying to find work.

5. Defendant's personal history, including present marital status and present means of support.

6. Assets, real and personal, and any transfer of assets to another.

7. Efforts made to modify the decree if it is considered excessive under the circumstances.

8. Health and physical ability to obtain gainful employment.

9. Availability for work (exact periods of any hospitalization, jail time, imprisonment).

10. Location(s) of defendant since decree and reason(s) for move(s), if there has been any change of address. [399 Mich 378-379.]

imputation, and therefore has waived the issue.[7]
Finally, and most significantly, MCL 552.517(3); MSA
25.176(17)(3) sets forth the factors that must be
shown supporting the judicial decision to impute
income. The friend of the court's findings and those
adopted by the trial court satisfied these statutory
requirements. The manual cannot and does not pur-
port to alter these requirements, because, to the
extent it would be claimed to do so, the manual con-
flicts with legislative mandate.

In all events, the majority's assertion that the "trial
court gave no consideration, except as to defendant's
medical condition, to any of the factors required by
*Sword* or the manual," *ante* at 200, is incomprehensi-
ble, given the express written findings of the trial
court, already noted above:

> Although Ms. Barber has a limited work history, once
> recovered from her surgery, there appears to be no physical
> or mental reason preventing her from working full time.
> Her children are getting older; they are in school full time;
> and if her one daughter had special needs, she is not now
> receiving any type of therapy.

---

[7] At the motion hearing from which defendant appealed, the defendant
presented two arguments. The first was that federal statutes "preempted"
imputation of income to defendant. The second was that the statutes of
this state and the guidelines preclude imputation of income. Defense
counsel expressly informed the trial court that the amount of the support
order was not at issue. He did not claim that income could be imputed
only if the trial court's order expressly referenced the factors contained in
subsection I. Likewise, in defendant's initial application for leave to appeal
to the Court of Appeals, defendant raised three points of error—the two
issues of law noted above, and a policy argument regarding imputation of
income to AFDC recipients. Having failed to raise any issue in respect to
the sufficiency of the foundation for the finding of a voluntarily unexer-
cised ability to earn before the trial court or the Court of Appeals, defend-
ant has waived the issue, *Arndt v Ball*, 335 Mich 595, 600; 56 NW2d 394
(1953), and defendant's two-page attempt to reopen the record before this
Court should be unavailing.

I believe Ms. Barber has the ability to work; that there are unskilled jobs available at minimum wage or greater; and that she has no compelling personal and/or family needs which would keep her from obtaining some type of employment.

The record is clear that both the friend of the court[8] and the trial courts considered the factors in subsection I before imputing income to defendant.[9] The majority's decision to remand this case to the trial court for consideration of the *Sword* and manual factors is thus both legally incorrect and factually unnecessary. The error in that approach is only compounded by the final conclusion that remand is also necessary to comply with "the four pieces of information," *ante* at 203, required by MCL 722.717(3); MSA 25.497(3). Three of the four are, by the majority's own view, inapplicable or satisfied. The result is that an order of child support long ago legitimately entered will be delayed until the trial court utters the magic words that apply the manual is unjust and inappropriate. The statute at issue requires only a statement of reasons to impute income, a requirement undoubtedly met by the courts below.

For the reasons stated above, I dissent.

WEAVER and TAYLOR, JJ., concurred with BOYLE, J.

---

[8] The friend of the court referee also noted that defendant had recently moved to an area that defendant contended lacked employment opportunities. The referee found that contention to be without merit, and also found that the reasons for defendant's move were contrary to the interests of her children.

[9] Furthermore, the fact that both the friend of the court referee and the trial court referenced some of these factors verbatim unequivocally supports the conclusion that they were well aware of their responsibility to consider these factors, and that they did so.