# STATE OF MICHIGAN

# COURT OF APPEALS

JEFFERY EARL ANDERSON,

    Plaintiff-Appellant,

v

SVITLANA ANDERSON,

    Defendant-Appellee.

UNPUBLISHED
June 2, 2015

No. 321880
Ottawa Circuit Court
LC No. 11-071347-DM

AFTER REMAND

Before: RIORDAN, P.J., and MARKEY and WILDER, JJ.

PER CURIAM.

This matter returns to us after remand to the trial court to make brief, definite, and pertinent findings regarding the factors set forth in 2013 Michigan Child Support Formula (MCSF), § 2.01(G)(2), regarding the imputation of income to plaintiff, Jeffery Earl Anderson, in this divorce action from defendant, Svitlana Anderson.

We instructed the trial court to make findings regarding plaintiff's alleged learning disabilities, criminal record, and diligence in seeking employment, and to assess the impact these factors may have on the court's decision to impute income to plaintiff. The trial court having done so, we find no error in the court's decision to impute income to plaintiff. We affirm.

## I. FACTUAL BACKGROUND

The parties married in April 2006, and their judgment of divorce was entered in February 2014. The parties have one child together, a daughter, born in 2010. The trial court granted sole legal and physical custody of the minor child to defendant. The court properly found that the majority of the best-interests factors, MCL 722.23, favored defendant as plaintiff often left his daughter with third parties to pursue his own interests and career opportunities out of state.

The financial business that plaintiff was involved with—DMI Financial—was based in Illinois, and a new construction job he took also had out-of-state locations. Plaintiff went on numerous out-of-state wrestling trips, and sometimes missed parenting time with the minor child because of these travels. Plaintiff's brother, his brother's girlfriend, neighbors, cousins, and his parents would watch the minor when plaintiff was away. The trial court also found that plaintiff used the marital home as a base to exercise parenting time. A fluctuating group of people

-1-

sporadically lived in the home, including plaintiff's brother and nephew, and plaintiff's other brother and daughters.

In the previous appeal, we affirmed the trial court order granting sole legal and physical custody of the minor to defendant. For purposes of child support, the trial court imputed income to plaintiff in the amount of $70,900. However, because the trial court did not review the appropriate factors under the MCSF, we remanded for the trial court to consider the relevant factors.

On remand, the trial court did as instructed, and reviewed the following factors: (c) the physical and mental disabilities that may affect a parent's ability to obtain or maintain gainful employment; (g) diligence exercised in seeking appropriate employment; (h) evidence that the parent in question is able to earn the imputed income; (i) personal history, including present marital status and present means of support. The trial court found that factors (c), (g), and (h) weighed in favor of imputing income to plaintiff, and that factor (i) was neutral. Ultimately, the trial court found that imputing income to plaintiff in the amount of $70,900 remained appropriate. We now review that decision.

## II. IMPUTED INCOME

### A. STANDARD OF REVIEW

"[W]e review a trial court's discretionary rulings, such as the decision to impute income to a party, for an abuse of discretion." *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Id.*

### B. ANALYSIS

To determine the appropriate amount of child support, a trial court must follow the MCSF, or provide reasons for failing to do so. *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). The first step in determining a child support award is to determine each parent's net income by considering all sources of income. *Id.* This calculation is not limited to a parent's actual income as it can include imputed income based on "the parent's unexercised ability to pay when supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Id.* at 285. "When a parent is voluntarily unemployed or underemployed, or has an unexercised ability to earn, income includes the potential income that parent could earn, subject to that parent's actual ability." 2013 MCSF 2.01(G).

A trial court should rely on the following relevant factors when calculating the amount of potential income:

 (2) Use relevant factors both to determine whether the parent in question has an actual ability to earn and a reasonable likelihood of earning the potential income. To figure the amount of potential income that parent could earn, consider the following:

(a) Prior employment experience and history, including reasons for any termination or changes in employment.

(b) Educational level and any special skills or training.

(c) Physical and mental disabilities that may affect a parent's ability to obtain or maintain gainful employment.

(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

(e) Availability of opportunities to work in the local geographical area.

(f) The prevailing wage rates in the local geographical area.

(g) Diligence exercised in seeking appropriate employment.

(h) Evidence that the parent in question is able to earn the imputed income.

(i) Personal history, including present marital status and present means of support.

(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification. [2013 MCSF 2.01(G)(2).]

"These factors generally ensure that adequate fact-finding supports the conclusion that the parent to whom income is imputed has an actual ability and likelihood of earning the imputed income." *Clarke v Clarke*, 297 Mich App 172, 184; 823 NW2d 318 (2012).

On appeal, plaintiff does not contest the trial court's decision to impute income to him. Rather, his disagreement is with the amount of income the trial court imputed. The trial court determined that $70,900 was a reasonable income to attribute to father because it was the average of: (1) the income that Michele Korponai, defendant's expert, testified that plaintiff could earn ($76,000 to $80,000 a year) and (2) plaintiff's income for 2005 through 2007, which he reported to the federal government ($63,800.33 a year).

We find that the trial court's conclusions are not in error. The trial court relied on Korponai's assessment of plaintiff's ability to earn income. Plaintiff had a bachelor's degree in marketing. After reviewing plaintiff's resume, Korponai concluded that plaintiff could obtain employment as a financial manager. The median pay for a financial manager in Michigan is

$46.56 an hour. Korponai also testified about an open position in Kent County for a budget administration manager that she believed was an appropriate position for plaintiff. The position had a salary of $76,000 to $88,000.[1]

Although plaintiff testified that his average annual income—according to his tax returns from 2006 to 2011—was somewhere between $20,000 and $26,000, the trial court did not believe this was an accurate representation of his income. Indeed, there was evidence that plaintiff was not forthcoming about the true amount of his income. For example, he failed to provide the trial court with his complete tax return for 2012, and he changed his testimony about whether he received commissions from DMI Financial. He also reported to the federal government in an affidavit of support for defendant's green card that he earned $47,189 in 2007, $48,456 in 2006, and $101,756 in 2005. He also pleaded the "Fifth" when asked if he was an authorized user on the DMI Financial account with Citizens First Bank.

Thus, not only was there evidence that plaintiff was qualified for a managerial position with a salary of up to $88,000, he also was evasive about the income he was producing. The trial court's decision to impute a higher salary to plaintiff resulted from its evaluation of plaintiff's credibility, which is an assessment that warrants our deference. *Rains v Rains*, 301 Mich App 313, 329; 836 NW2d 709 (2013). Further, based on Korponai's testimony about the appropriate salary for a person with plaintiff's skills and experience, we find no error in the trial court's selection of $70,900 as the amount of income to impute to plaintiff.

Nor do we find any error in the trial court's findings regarding the factors it analyzed on remand. In regard to factor (c)—the physical and mental disabilities that may affect a parent's ability to obtain or maintain gainful employment—the court found that plaintiff suffers from ADD and dyslexia. Nevertheless, the trial court found that the evidence at trial establishes that these conditions have not prevented plaintiff from serving in management positions in a number of businesses. As the trial court found, there is no evidence that any mental disability has affected plaintiff's ability to work in his chosen field. Thus, we find no error in the trial court's finding.

In regard to factor (g)—diligence in seeking appropriate employment—the trial court found that although plaintiff testified that he applied for 200 positions, there was little documentation to support that claim. See *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008) ("This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors."). The court also found that plaintiff settled for employment at a low hourly rate, and at a location several hours away from the minor child, which further strained the financial resources available to support the minor. Thus, the court concluded that plaintiff did not exercise due diligence in seeking and preserving financial resources, and that "[h]is thought process reflects no consideration of maximizing the income available to support his child." We find no error in the trial court's findings. As the trial court recognized, plaintiff's exorbitant claim of job applications is

---

[1] Although plaintiff claimed that he was not qualified for the position, Korponai testified that based on his education and experience, it would be an appropriate fit for him.

unsubstantiated, and his selection of jobs renders his earnestness in seeking employment doubtful.

As for factor (h)—evidence that the parent is able to earn the imputed income—the trial court found that the evidence at trial demonstrated that plaintiff earned significant income in managerial-level positions with a number of different companies. Indeed, plaintiff had significant involvement in business throughout his career, most notably of which was DMI financial. We again find no error in the trial court's finding.

Finally, the trial court considered factor (i)—personal history—and, in particular, plaintiff's conviction for domestic violence. The trial court found that no evidence was presented to suggest that any business had not hired plaintiff because of his criminal record, and this factor was neutral regarding the decision to impute income. We find no error in the trial court's reasoning. As Korponai testified, a criminal conviction is "not necessarily" a deciding factor for an employer, as a job applicant's "soft skills" may be more important.

Based on the foregoing, we find that the trial court's decision to impute income in the amount of $70,900 to plaintiff did not fall outside the range of reasonable and principled outcomes. *Carlson*, 293 Mich App at 205. The trial court's findings were supported with evidence that plaintiff had an actual ability and likelihood of earning the amount of the imputed income. *Ghidotti v Barber*, 459 Mich 189, 193; 586 NW2d 883 (1998).

### III. CONCLUSION

The trial court did not err in imputing income in the amount of $70,900 to plaintiff. We affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Kurtis T. Wilder