# STATE OF MICHIGAN

# COURT OF APPEALS

---

GENNILE NAJIB HAJJI,

        Plaintiff-Appellee,

v

DURED BADRI HAJJI,

        Defendant-Appellant.

UNPUBLISHED
July 28, 2016

No. 328209
Oakland Circuit Court
Family Division
LC No. 2014-824351-DM

---

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right from a judgment of divorce, challenging the award of sole legal and physical custody of the parties' minor children to plaintiff. Defendant further contends that the trial court's awards of child support and spousal support and the distribution of personal property and debt constituted error. Defendant also asserts as error the trial court's rulings regarding discovery, implying bias by the trial judge. We affirm.

Defendant first challenges the trial court's award of joint legal and physical custody of the children to plaintiff. The standards of review in a child custody appeal were elucidated in *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000), as follows:

> We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [Citations omitted.]

In a child custody proceeding, an abuse of discretion is deemed to have occurred when "the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). MCL 722.28 states:

To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

See also *Pickering v Pickering*, 268 Mich App 1, 5; 706 NW2d 835 (2005).

Initially, the trial court found the existence of an established custodial environment for the children with both parents. Defendant implies that the trial court erred in its determination regarding the existence of an established custodial environment. Other than this implication of error, defendant fails to provide any explanation of mistakes in the trial court's ruling or statement of law regarding the established custodial environment. This issue is deemed abandoned because plaintiff has failed to develop any meaningful legal argument or to provide citation to relevant legal authority in support of his position. *Berger*, 277 Mich App at 712, 715. "[T]his Court need not address an issue that is given only cursory consideration by a party on appeal." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001).

"The Child Custody Act, MCL 722.21 *et seq.*, governs child custody disputes. The act is intended to promote the best interests of children, and it is to be liberally construed." *Berger*, 277 Mich App at 705; see also MCL 722.26(1). In making a custody determination, the trial court must first, as a threshold matter, determine whether the children have an established custodial environment with one or both parents. See MCL 722.27(1)(c). At the time of trial, plaintiff and defendant shared joint physical and legal custody of their children, which led to the trial court finding that an established custodial environment existed with both parties. Plaintiff, however, sought sole physical and legal custody of the children and, therefore, bore the burden of proving by clear and convincing evidence that a change granting her sole physical and legal custody served the children's best interests. *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001).

When determining an award of custody, "a trial court is required to evaluate the best interests of the children under the 12 statutorily enumerated factors." *Kessler v Kessler*, 295 Mich App 54, 63-64; 811 NW2d 39 (2011); see also MCL 722.23. Potential joint custody is analyzed under the best interest factors of MCL 722.23, but in view of "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." See MCL 722.26a(1)(a) and (b). "At the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request." MCL 722.26a(1). The trial court granted sole legal and physical custody to plaintiff premised on the prolonged history of animosity and conflict between the parties, leading to their inability to effectively communicate, and the trial court's determination that plaintiff was more likely to attempt to foster a relationship between the children and the other parent.

In asserting error by the trial court, defendant emphasizes factor (j) of the best interest factors, contending that the trial court's finding on this factor was contrary to the great weight of the evidence. In general, the trial court found the parties equivalent on factors (a) through (h) and noted, based upon an in camera interview with the children, that their preferences were considered in accordance with factor (i). Addressing the issue of domestic violence under factor

(k), the trial court acknowledged accusations made by plaintiff and defendant regarding incidents that occurred during the marriage.

In evaluating factor (j), the trial court specifically noted the longstanding "high level of conflict" that characterized the parties' relationship, stating:

> The parties do not communicate. Mrs. Hajji testified that Mr. Hajji blocked her text messages and does not respond to her emails. The parties primarily communicate through the children. Mr. Hajji says he will cooperate with Mrs. Hajji, but he has not demonstrated an ability to do so. Mrs. Hajji is more willing to cooperate in making important decisions for the children.

The trial court in evaluating factor (l) emphasized their inability to communicate, stating:

> There is a high level of acrimony between the parties, such that it impedes their ability to jointly make decisions regarding the children. But for this inability to communicate, these parties would be suitable for joint custody.

Factor (j) of the best interest factors pertains to the "willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court's finding favoring plaintiff on this factor was not contrary to the great weight of the evidence. Although plaintiff acknowledged the parties' inability to communicate during their marriage, resulting in frequent verbal arguments and lack of discourse, she also testified to ongoing attempts to contact defendant regarding the children, which defendant rebuffed by refusing to respond or blocking her efforts to contact him through telephone calls and text messages. In addition, defendant did not dispute that, while separated from plaintiff and while sharing joint custody, he retained the children for five consecutive weeks. Testimony was adduced suggesting that defendant did not initially provide plaintiff with information concerning his living arrangements and actively altered their emergency contact cards at school. While plaintiff did not, perhaps, demonstrate the greatest maturity or skill in her attempts to communicate with defendant, at least attempts were made to convey information pertaining to the children and their needs. The trial court's finding that factor (j) favored plaintiff was justified.

Factor (l) provides the trial court with an opportunity to identify and discuss "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(l). Based on the concerns expressed by the trial court pertaining to factor (j) and the destructive and disruptive interactions resulting from the parties' inability to communicate, the trial court, while not specifically stating that factor (l) favored either party, correctly used factor (l) to consider how these difficulties would impact the best interests of the minor children. In evaluating both physical and legal custody, it is imperative that the trial court determine whether the parties are capable of communicating in a sufficiently effective manner to convey information and for purposes of joint decision-making. As such, while defendant does not make an explicit argument regarding factor (l), we nonetheless note that the trial court's finding on factor (l) was not contrary to the great weight of the evidence.

Defendant's argument on this matter suggests that the trial court erred in finding the evidence and testimony of plaintiff to be more credible than defendant's. "Because this case was heard as a bench trial, the court was obligated to determine the weight and credibility of the evidence presented." *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008). This Court "defer[s] to the trial court's credibility determinations given its superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). As discussed in *Beason v Beason*, 435 Mich 791, 804; 460 NW2d 207 (1990):

> This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. [Citation and quotation marks omitted.]

A review of the lower court transcripts and record does not suggest any particular or notable contradictions in the evidence such that it was "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id*. As such, no basis exists for this Court to interfere with the trial court's credibility determinations, to the extent that they influenced the custody determination.

Defendant also suggests that it is necessary to remand this matter to the trial court for revelation of the children's preferences, see MCL 722.23(i), to determine potential error in the award of custody. "As a general rule, a trial court must state on the record whether children were able to express a reasonable preference and whether their preferences were considered by the court, but need not violate their confidence by disclosing their choices." *Fletcher v Fletcher*, 200 Mich App 505, 518; 504 NW2d 684 (1993), rev'd in part on other grounds 447 Mich 871 (1994). Given the animosity already existing between the parties, the trial court's decision to not reveal the content of its discussions with the minor children was appropriate. It was sufficient for the trial court to interview the children and denote that it had taken the children's stated preferences into consideration. Those preferences did not require disclosure and their revelation in favor of either party would not alter this Court's determination regarding the trial court's ruling.

While the trial court's findings on factors (j) and (l) are supported within the record, the parties were deemed equivalent on the remaining factors. The implied question then is whether a trial court's finding on one or two of the best interest factors can outweigh findings pertaining to the remainder of the factors. As discussed in *Heid v AAASulewski*, 209 Mich App 587, 594; 532 NW2d 205 (1995), "[W]e are unwilling to conclude that mathematical equality on the statutory factors *necessarily* amounts to an evidentiary standoff that precludes a party from satisfying the clear and convincing standard of proof." The Court further stated:

> We disapprove the rigid application of a mathematical formulation that equality or near equality on the statutory factors prevents a party from satisfying a clear and convincing evidence standard of proof. We are duty-bound to examine all the criteria in the ultimate light of the child's best interests. [*Id*. at 596.]

In other words, the statutory best interest factors need not be attributed equal weight. "Neither a trial court in making a child custody decision nor this Court in reviewing such a decision must mathematically assess equal weight to each of the statutory factors." *McCain v McCain*, 229 Mich App 123, 131; 580 NW2d 485 (1998).

Based on the evidence, the trial court's determinations on factors (j) and (l) were not against the great weight of the evidence. The trial court expressed legitimate concerns regarding the inability of the parties to effectively communicate on a daily basis on even minor issues, let alone an ability to discuss and resolve major issues that may arise regarding medical and educational disputes in the best interests of the children. Consequently, the trial court's ruling regarding the ultimate custody decision did not constitute an abuse of discretion.

Next, defendant asserts that the trial court erred in failing to permit him to conduct discovery—specifically, to depose plaintiff. He further contends that the trial court's denial of discovery to defendant was the result of judicial bias and prejudice and constituted a violation of due process. However, defendant utterly fails to address these issues in the argument portion of his brief or to provide any authority in support of his assertions; thus, the issues are abandoned and we decline to consider them. *Berger*, 277 Mich App at 712, 715; *Eldred*, 246 Mich App at 150.

Finally, defendant asserts that the trial court erred in its award of child support and spousal support and in the distribution of the assets and debts of the parties. While defendant's argument is cursory on these issues, he primarily asserts as error the trial court's imputation of income to him and the failure of the trial court to consider the excessive debt defendant was burdened with in the award of child and spousal support.

In general, a trial court must make factual findings and dispositional rulings in granting a judgment of divorce. *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). "The appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). "A finding is clearly erroneous if [this Court is] left with a definite and firm conviction that a mistake has been made." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). The ultimate "dispositional ruling of the trial court is discretionary and will be affirmed unless this Court is left with the firm conviction that it was inequitable." *Reed*, 265 Mich App at 150. Specifically with regard to the calculation of child support:

> Whether the trial court properly applied the Michigan Child Support Formula (MCSF) to the facts of the case is a question of law that this Court reviews de novo. This Court also reviews de novo the proper interpretation of the MCSF and the applicable statutes. . . . Where the MCSF commits a matter to the discretion of the trial court, this Court will review the trial court's exercise of discretion for abuse. . . . Finally, to the extent that the trial court made factual findings in determining the amount of support under the child support formula, those findings are reviewed for clear error. [*Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007) (citations omitted).]

At the outset, we note that defendant fails to make any citations to the lower court record or appropriate citations to legal authority with regard to a claim of error in the award of spousal support. As such, the issue is waived and deemed abandoned. *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id*. (citations omitted).

With reference to the distribution of assets and debt, it is well recognized that "[t]he goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger*, 277 Mich App at 716-717. Defendant sets forth no reasoned argument or legal authority regarding the distribution of assets but merely cursorily notes that it was "disproportionate." Thus, he has abandoned this issue as well. *Houghton*, 256 Mich App at 339-340. At any rate, the gist of defendant's argument is not error in the distribution of the assets and debt, but rather, a failure to consider the amount of debt defendant was responsible for in the determination of child support obligations and the commensurate ability of defendant to meet all of his financial demands.

Addressing defendant's claims regarding the calculation of child support, his first assertion of error (regarding imputed income) is reliant on a false premise. This Court discussed child support in *Stallworth v Stallworth*, 275 Mich App 282, 284-285; 738 NW2d 264 (2007):

> According to the . . . Michigan Child Support Formula Manual, the first step in determining a child-support award is to ascertain each parent's net income by considering all sources of income. 2004 MCSF 2. In general, this is determined by ascertaining "the actual resources of each parent." MCL 552.519(3)(a)(vi); *Ghidotti v Barber*, 459 Mich 189, 198; 586 NW2d 883 (1998). But longstanding Michigan caselaw permits a court to impute income to a parent on the basis of the parent's unexercised ability to pay when supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income. *Id*. at 198-199. Consistent with this caselaw, the MCSF grants a court the discretion to impute income to a parent, 2004 MCSF 2.10(B), which the manual defines as "treating a party as having income or resources that the individual does not actually have." 2004 MCSF 2.10(A). "This usually occurs in cases where there is a voluntarily [sic] reduction of income or a voluntary unexercised ability to earn." *Id*.

Here, the trial court did not impute income to defendant because it did not rely on an unexercised ability to earn, but rather, it averaged defendant's income to the best of its ability to ascertain his earnings over the years immediately preceding the divorce.

In calculating child support, the trial court provided a detailed analysis, relying on the MCSF Manual and indicating that the figures used for defendant's income were premised on the forms he submitted for federal tax purposes and the testimony of the parties. Once yearly income was determined for the previous three-year period, the trial court averaged defendant's income to find the proper amount for use in the computation of child support. Given defendant's

variability in income and his failure to provide adequate documentation contradicting the trial court's calculations, any error in the figures obtained is substantially attributable to defendant's lack of recordkeeping or ability to substantiate his claims regarding his financial status.

Defendant asserts that the support order should be reduced premised on his burdensome debts.[1] We note that, if defendant is able to demonstrate that his income is reduced in the future, he is not precluded from seeking a modification of the child support order. See MCL 552.17(1) ("After entry of a judgment concerning annulment, divorce, or separate maintenance and on the petition of either parent, the court may revise and alter a judgment concerning the care, custody, maintenance, and support of some or all of the children, as the circumstances of the parents and the benefit of the children require."). Given the trial court's adherence to the child support formula[2] and defendant's failure to fully document his payment obligations and efforts, defendant's contention of error in the award of child support would be more properly addressed through a motion for modification of child support, which would permit defendant to present updated and current documentation relevant to his claims of reduced income availability. "[A] child support order may be modified by the trial court upon a showing by the petitioning party of a change in circumstances sufficient to justify [the] modification." *Clarke v Clarke*, 297 Mich App 172, 188-189; 823 NW2d 318 (2012) (citations and quotation marks omitted).

Defendant also asserts that the trial court erred in calculating child support because it should have been based on equal parenting time. Defendant provides no legal authority to support his position. To the extent that defendant may be implying a form of acceptable deviation from the child support guidelines, the trial court specifically noted that the parties had not "presented any evidence of deviation." Defendant has failed to substantiate a claim for alteration or deviation from the child support formula, see MCL 552.605, and has otherwise failed to demonstrate error on the part of the trial court.

Affirmed.


/s/ Patrick M. Meter
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien

---

[1] The debts are largely attributable to a failure to pay taxes.

[2] We note that after the trial court set forth the income levels for the parties, it stated, "Neither party presented any evidence of deviation."