# STATE OF MICHIGAN

# COURT OF APPEALS

TABETHA ARGEL,

        Plaintiff/Counter-Defendant-
Appellee,

v

GEORGE ELLIOTT ARGEL,

        Defendant/Counter-Plaintiff-
Appellant.

UNPUBLISHED
June 12, 2018

No. 340148
Jackson Circuit Court
LC No. 16-001097-DM

Before: O'CONNELL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right a judgment of divorce that granted the parties joint legal custody of their three-year old child and that granted plaintiff sole physical custody. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

The parties met in Texas when plaintiff was 17 and defendant was 24. Defendant was a lifelong resident of Texas whereas plaintiff's family moved approximately every two years to accommodate her father's work. The parties married in Texas in December 2012 and the child was born in January 2014. Eventually, plaintiff's parents relocated to Michigan and the parties followed.

Plaintiff left the marital home in March 2016. She testified that the breakdown of the marriage was the result of defendant's alleged obsession with teen pregnancy pornography. In contrast, defendant claimed that the breakdown of the marriage was the result of plaintiff's extramarital affair.

In July 2016 plaintiff took the child to the hospital with allegations that defendant had sexually abused the child. The allegations resulted in supervised parenting time for defendant until a final report was made. Defendant testified that his in-laws, who were co-owners of the marital home, were unlawfully entering the home. Defendant testified that the restricted visitation with the child, his in-law's harassment, and his own father's terminal illness caused him to relocate to Texas in August 2016.

-1-

Because of plaintiff's allegations regarding abuse, defendant requested that the trial court order psychological testing. The parties presented themselves to Dr. Tomas Muldary, who prepared a child custody evaluation. The trial court considered this October 2016 evaluation and conducted a two- day trial in June 2017. The trial court concluded that the child's custodial environment was with plaintiff, that the child's best interests were served by awarding sole physical custody to plaintiff, and that the child would be best served if defendant's visits continued to take place in Michigan. The trial court also imputed income onto defendant for purposes of child support and denied defendant's request that plaintiff pay his substantial attorney fees.

## II. CUSTODY AND PARENTING TIME

Defendant argues that the trial court committed reversible error in its determinations of custody and parenting time by admitting into evidence, relying on and deferring to Dr. Muldary's written "child custody evaluation", by finding an established custodial environment existed only with plaintiff, by making findings of fact inconsistent with the evidence in its determinations of custody and parenting time, and in mandating that defendant exercise his parenting time in Michigan.

Pursuant to MCL 722.28, this Court must affirm a custody order on appeal "unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue." *Pierron v Pierron*, 282 Mich App 222, 242; 765 NW2d 345 (2009), aff'd by 486 Mich 81. Under the great weight of the evidence standard, this Court must affirm the trial court's findings "unless the evidence clearly preponderates in the opposite direction." *Id*. at 242-243. This Court defers to the credibility determinations made by the trial court. *Id*. at 243. The abuse of discretion standard is applied to the trial court's discretionary rulings, including to whom custody is granted. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). An abuse of discretion occurs when the result is "so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Mitchell v Mitchell*, 296 Mich App 513, 522; 823 NW2d 153 (2012). This Court reviews questions of law for clear error, which occurs when the trial court errs in its choice, interpretation, or application of the law. *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013).

## A. MULDARY'S CUSTODY EVALUATION

At trial, Muldary's report was admitted by stipulation. Plaintiff testified that the parties agreed to a custody evaluation. Defendant testified that he had requested a psychological evaluation and Muldary provided a child custody evaluation and defendant "was not educated in that arena to know the difference. I relied on his expertise and familiarity with the court order to provide what the court had requested." Defendant denied seeking any "upgrade."

Defendant first argues that the trial court erred in admitting the report over his objection. However, the report was admitted by stipulation of the parties. And, although defendant testified that he was ignorant of what he was agreeing to, it appears that the parties stipulated to a child custody evaluation.

Defendant's primary argument seems to be that the trial court abdicated its responsibility to independently determine the child's best interests by deferring to a third party. "The Child Custody Act *require*[*s*] the circuit court to determine the best interests of the children before entering an order resolving the custody dispute" and "[n]othing in the Child Custody Act gives parents or any other party the power to exclude the legislatively mandated 'best interests' factors from the court's deliberations once a custody dispute reaches the court." *Harvey v Harvey*, 470 Mich 186, 192-193; 680 NW2d 835 (2004).

When discussing its findings of fact and conclusions of law, the trial court pointed out the incorrect statement in Muldary's report that the trial court had ordered a child custody evaluation; instead, it was something that the parties "agreed between themselves to do." The trial court then added:

> I'm also happy that I waited to review Dr. Muldary's custody evaluation in detail. I think I mentioned on the record that I may have reviewed some of it in passing on an in chambers meeting . . . but I didn't really have any specific recollection of it. And so I think it was helpful for me to wait, that way I could make my own findings of fact based on the credibility or lack thereof of the witnesses. And then to go through and read that report it either, I guess it added to my own independence.
>
> * * *
>
> I also want you to know that I am adopting Dr. Muldary's custody evaluation as my best interest findings and I will supplement Dr. Muldary's report based on testimony that I heard. So in other words his report is not the sole thing I'm relying on in making a determination.

Although the trial court indicated that it was adopting the custody evaluation as its best interests findings, it is clear that the evaluation was not the sole basis for the trial court's decision. A review of the trial court's factual findings reveals that it did not abdicate its statutory obligation responsibilities.

## B. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant next argues that the trial court erred when it determined that the child's established custodial environment was with plaintiff.

Whether an established custodial environment exists is a question of fact that the trial court must address before it determines the child's best interest. *Brausch v Brausch*, 283 Mich App 339, 356 n 7; 770 NW2d 77 (2009). A custodial environment is established if:

> over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

An established custodial environment is one of significant duration, both physical and psychological, in which the relationship between the custodian and child is marked by security, stability and permanence. *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981); *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336, lv den 482 Mich 896 (2008). An established custodial environment can exist in more than one home. *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007). The trial court must make a specific finding regarding the existence of a custodial environment. *Jack v Jack*, 239 Mich App 668, 670; 610 NW2d 231 (2000). "The trial court need not comment on each item of evidence or argument raised by the parties, but its findings must be sufficient for this Court to determine whether the evidence clearly preponderates in the opposite direction." *McIntosh v McIntosh*, 282 Mich App 471, 474; 768 NW2d 325 (2009). An appellate court defers to the trial court's credibility determinations. *Id.*

The trial court determined that the child's custodial environment was with plaintiff:

So in this case the testimony I think was clear and dead on. There is an established custodial environment of [the child], who is three, and it's with her mother. Her mother actually has been the primary care giver for that child.

She – we heard lots of testimony about how she engaged in third, fourth trimester, so to speak, bonding with the child, and breast feeding the child, changing the child, spending 24 hours a day with the child, and being responsible as a parent.

I don't need to kill a bunch of time by going into greater detail. The testimony reflects that.

We do know that I had testimony from [defendant], that he wanted to be involved. However [plaintiff] was a little forceful when it came to [the child] and he allowed that natural bond to occur and I actually think it was quite generous of him. I don't know of any other dad that would wait. He says he waited a month to hold his baby. [Plaintiff] testified he waited seven months. But we know that the testimony is a little shady given the fact that we saw photos of [defendant] holding his baby at a much earlier age.

So – in fact I think there were some hospital photos that you showed that you were doing that. But there really isn't any dispute that [plaintiff] was the hands on parent.

So I will find that she is the parent with the established custodial environment.

Contrary to defendant's contention, there was competent evidence of record to support the trial court's finding that the child's established custodial environment was with plaintiff. The fact that the trial court previously commented that plaintiff was not a credible witness did nothing to change the fact that plaintiff was, by *all* accounts, the child's primary caregiver from the time she was born until the time of trial. The child lived with plaintiff every day of her life. And while defendant may have enjoyed a bond with the child, the fact remains that he moved to

Texas in August 2016, absenting himself from her life. Defendant cannot sincerely argue that the child looks to him for guidance, discipline, the necessities of life, and parental comfort in the same manner that she looks to plaintiff.

## C. BEST INTEREST FACTORS

Custody disputes must be resolved in the child's best interest, as measured by the factors set forth in MCL 722.23. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). A single circumstance can be relevant to and considered in determining more than one of the child custody factors. *Fletcher v Fletcher* (*After Remand*), 229 Mich App 19, 25-26; 581 NW2d 11 (1998). "A trial court's findings regarding each best interests factor are reviewed under the great weight of the evidence standard. The trial court's ultimate custody decision is reviewed for an abuse of discretion. The overriding concern is the child's best interests." *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009) (citations omitted).

Because the child's established custodial environment was with plaintiff, defendant's burden was to show by clear and convincing evidence that a change in custody was appropriate. The trial court reviewed the statutory best interests factors under the Child Custody Act, MCL 722.23, with this burden in mind. On appeal, defendant argues that the trial court erred in its findings as to factors (a), (c), (e), (f), and (j).

Factor (a) evaluates the "love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The trial court found that, while the child and defendant enjoyed a bond, "I believe that [plaintiff] has a stronger bond with the child given the amount of time that she spends, virtually every single day, with the child since birth" and that factor (a) favored plaintiff.

On appeal, defendant argues that the trial court should have found the parties equal and that the trial court placed too much emphasis on how much time the child spent with plaintiff without regard to the child's bond with defendant. However, even acknowledging that defendant had a strong bond with the child, the fact remains that the plaintiff shared a stronger bond, given her daily and consistent contact with the child as the child's primary caregiver.

Factor (c) evaluates "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court pointed out that both parties were capable of caring for the child and simply disagreed with how to do it. Defendant was a licensed emergency care attendant while plaintiff was more into homeopathic remedies. The trial court noted that, although defendant was confident that he could provide a superior childhood, he failed to elaborate how. The trial court found that factor (c) equally favored both parties.

On appeal, defendant argues that the trial court erred in failing to favor defendant on factor (c) because the trial court ignored the evidence that defendant had a college degree and an

established history of providing for the child. The trial court clearly acknowledged defendant's training and, therefore, did not ignore the facts. Still, the trial court concluded that both parties were capable of caring for the child and just had different methods in doing so.

Factor (e) evaluates "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court noted that neither party intentionally disrupted the child's life, but noted that defendant "up and moved to Texas and that shredded her permanency. Not only were her parents not together any longer but her father wasn't there. And I believe this factor favors [plaintiff]."

On appeal, defendant argues that the trial court should have found that factor (e) favored neither party, since there was no evidence that plaintiff would permanently reside with her parents. The fact remains, however, that plaintiff and the child had lived with her parents since plaintiff left the marital home in March 2016 and there had been no disruptions to the custodial home.

Factor (f) evaluates "[t]he moral fitness of the parties involved." MCL 722.23(f). The trial court referred to the evidence that "went on ad nauseam" regarding pornography and plaintiff's infidelity and concluded that the factor equally favored both parties.

On appeal, defendant argues that the trial court should have concluded that factor (f) favored defendant, given plaintiff's false allegations of sexual abuse, her infidelity, and other numerous false allegations regarding defendant's behavior during their marriage. However, it is clear from the trial court's extensive findings that, in fact, each of these was considered, along with defendant's pornography fascination. The trial court simply determined that the parties were equally morally fit.

Factor (j) evaluates "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." The trial court observed:

I believe [defendant's] controlling and I believe he absolutely will not facilitate a relationship between [the child] and her mother. And it's, it's his presence about that. It's either all or nothing.

His comment with Dr. Muldary is, I will never stop fighting for custody, regardless of what this court decides. And if that's how he feels I understand that. That's how mothers feel. That's how all parents should feel.

But what he's failed to do in his comments to Dr. Muldary were to acknowledge, it depends on what's best for my daughter. You know, is this judge totally off her rocker? Did she follow the law? Did she misperceive anything? There are other things that need to be taken into account other than a blanket statement such as the one he made.

I believe wholeheartedly that he will try to impede [plaintiff's] ability to be with [the child] if he's awarded custody.

[Plaintiff] on the other hand, in addition to telling Dr. Muldary that it would be best if [the child] never saw her father, went on to say, well but if the court did . . .award him custody that she would move to Texas, but that's not what's best for her, meaning [plaintiff]. And Dr. Muldary pointed that out, that her thought process was also, it's not about what's best for [the child]. It's about what's best for [plaintiff].

And so the last point I want to make here is that [plaintiff] has indicated on the record now, given the results of the testing at the U of M, the fact that CPS did not find a preponderance of evidence of abuse and neglect, that there is no criminal investigation, now she believes that [defendant] did not hurt her child. But he testified he's still experiencing the repercussions of that.

And this whole thing could have been avoided differently, or if handled differently. And I find that factor equally disfavors or favors both parties.

On appeal, defendant argues that the trial court should have found that factor (j) overwhelmingly favored defendant, given plaintiff's false allegation that defendant had sexually abused the child. The trial court considered the allegations but appropriately focused on the future to determine whether plaintiff and defendant would be able to facilitate the relationship between the child and her other parent. The trial court properly concluded that neither parent would likely facilitate such a relationship.

There was ample support for the trial court's findings under the statutory best interests factors.

## D. PARENTING TIME

The trial court again referred to Muldary's report when discussing parenting time. Muldary made the following observations:

[The child] has never been in the exclusive care of her father for extended periods of time, and her familiarity with him has likely faded given the minimal contact since the parties separated and even less contact over the last few months. Indeed, with long separations, a very young child has difficulty maintaining an image of the absent parent.

It is difficult to support a recommendation for further restrictions or continued supervised parenting time, given the lack of evidence that [defendant] is truly a risk to [the child]. Instead, it is recommended that consideration be given to alternate weekend parenting time, from Saturday at 9:00am to Sunday at 5:00pm (i.e., one Saturday overnight). This should be preceded by a gradual expansion of unsupervised parenting from one hour to four hours, then six hours, then eight hours on consecutive weekend days, every other week, over a two-month period.

It remains to be seen if [defendant] will maintain consistent contact through a regular parenting time schedule of alternate weekends. He may claim

that the cost of flying twice a month from Houston is prohibitive, and in fact, it might not be economically feasible. But, the reality is that he made the decision to move there, and in my opinion, it would not seem fair to require [plaintiff] to share in half the cost. It is also noted that it is rarely recommended that children of [the child]'s age be required to travel to a distant geographic location for an extended visit with the noncustodial parent.

If [defendant] does follow the schedule and visits appear to go well for [the child] for at least three months, then perhaps parenting time could be expanded to two alternate weekend overnights. It is recommended that the proposed schedule be maintained year round, with no extended summer vacations over the next 3-4 years. Long visits during the summer are usually contraindicated for young children.

In setting forth parenting time, the trial court concluded:

But I want [the child] to have as much time as she can possibly have with her dad. But I have to follow Dr. Muldary's recommendation that parenting time will not occur in Texas. All parenting time with [the child] and her father will occur in Michigan unless I give permission specifically for parenting time for certain circumstances. Like say for example [defendant] wanted to take [the child] to Disney World, would I consider that if it were in a pleading? Absolutely. That child is entitled to that kind of fun thing, you know.

I don't think he's going to abscond with her. I think he's threatened that.

The trial court indicated that it was trying to be cautious, not because defendant would harm the child, but because it was not confident defendant would be able to step into his parental role in Texas. Defense counsel asked whether it would be possible for defendant to fly to Michigan and accompany the child back to Texas for visits, but trial court noted:

See I think though Dr. Muldary's concern was the length of time that the child would be away from [defendant] and then to have her put in his car traveling that far for an extended period of time. What he's afraid of is that the bond will not continue because [defendant] will unlikely not follow parenting time arrangements.

So I'm trying to be cautious, not because I believe that [the child] will be physically injured, but because [defendant] may not be able to step into the role of continuing to parent his daughter from the state of Texas. And I don't want her feelings hurt. I mean, I think Dr. Muldary makes sense in that regard.

Defense counsel then pointed out the significant cost to defendant to exercise visitation. The trial court responded:

And again because he chose to move – and I understand he went there to help his parents and that's an honorable son that does that. You know, I would be surprised if [plaintiff] didn't do the same thing, or if I didn't do the same thing.

-8-

That's what – kids are supposed to take care of their parents. But that job is accomplished.

Your mom can uproot herself here if you feel a, you know, continuing desire to be her support system. But I'm not going to order [plaintiff] pay the cost of [defendant] traveling when he's the one that's opted to leave.

On appeal, defendant argues that the trial court erred in "blindly adhering" to Muldary's recommendation that all visits take place in Michigan. However, the trial court did not simply defer to Muldary; instead, the trial court made an independent determination that the child's interests are best served by defendant coming to Michigan. And while defendant complains of the cost of coming to Michigan, similar costs would be incurred for the child to go to Texas. It is clear that the trial court considered defendant's arguments when rendering its decision.

### III. CHILD SUPPORT

Defendant argues that the trial court erred in imputing income when discussing child support. Child support orders are reviewed for an abuse of discretion. *Peterson v Peterson*, 272 Mich App 511, 515–16; 727 NW2d 393 (2006). "Whether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support formula are reviewed de novo as questions of law." *Id*.

At trial, defendant testified that his 2016 adjusted gross income for his company, Radio Flyer, was "substantially less due to the tremendous amount of stress, both on the business, myself, as well as legal and travel fees." Defendant did not believe that the Friend of the Court or conciliator's calculations were accurate as to his income. The year 2015 was Radio Flyer's best year and 2016 was its worst. Defendant brought his self-prepared 2016 tax return to trial in which he filed married/filing separately. Defendant did not provide the attachments or schedules. Defendant's adjusted gross income for 2016 was $2,398, again "due to the tremendous financial burdens placed on Radio Flyer Innovations as a result of this divorce." That was in contrast with 2015, where defendant's net income was $53,447. Defendant testified that he deducted his attorney fees ($37,000) and travel expenses to Michigan from his business income. In questioning by the court, defendant admitted that "there were a tremendous amount of sales [for 2016] however the expenses are what brought down the net profits." He believed sales were somewhere around $180,000 for 2016, but, again, he did not have the full tax return.

The trial court made the following comments when it imputed income on defendant:

So I'm very distracted by [defendant's] testimony when it comes to his income. I, I really am shocked that he testified to me that his income for 2016 was $2,398.00 and the gross receipts of the business were roughly $197,000.00.

But he told me that he was not able to work because he was spending his time preparing for divorce. Most people that get divorced still have to work. You don't get to not generate an income. So clearly you have unearned wages.

Plus I was also shocked of everything that are taking out of your business. And I would guess maybe the IRS would be as well if you took $37,000.00 out of

-9-

your company business to pay your personal divorce fees to M. Langenburg. That was what your testimony was.

And you did testify that cost of product has gone up and also that your travel costs to Michigan, sometimes business related, sometimes not. Again, I'm not a CPA so what's deductible in a business, I don't know.

But what I know is if you made, in 2015, $53,447.00 you have had the ability to make that this year. And if you were spending your time ear[n]ing money instead of, you know, making personal property lists that don't make any sense you probably would have had a greater income.

So your income, you should provide current documentation to the Friend of the Court and if it's anything less I'm in, indicating that unless they find some exceptional circumstance I think your income is $53,477.00.

When assessing a parent's ability to pay child support, the trial court is not limited to consideration of a parent's actual income. *Reed v Reed*, 265 Mich App 131, 163; 693 NW2d 825 (2005). Rather, it may consider the parent's voluntarily unexercised ability to earn. *Id.*, citing *Ghidotti v Barber*, 459 Mich 189, 198; 586 NW2d 883 (1998). Although defendant complains that the trial court failed to properly analyze the issue, it is clear that the trial court properly determined that defendant had voluntarily unexercised income or had taken advantage of tax law to indicate that his income was far below what it actually was.

IV. INCOME TAX DEPENDENCY EXEMPTION

Defendant argues that the trial court failed to realize that it had the ability to allocate the federal tax dependency exemption and, in failing to realize its discretion, the trial court necessarily abused its discretion when it declined defendant's request that the parties claim the dependency exemption on alternating years.

The trial court noted:

I believe that [defendant] was requesting alternating years of claiming the child as a dependent. I don't get involved in that. IRS rules are what they are and they prevail. So I just want you to know that that's what the ruling is in that regard.

"[I]t is within the authority of state courts in domestic relations matters to award the federal income tax dependency exemptions for the minor children." *Frain v Frain*, 213 Mich App 509, 512; 540 NW2d 741 (1995), citing *Fear v Rogers*, 207 Mich App 642, 646; 526 NW2d 197 (1994) ("the income tax dependency exemption allocation normally should be considered part of the child support award, not as part of the property settlement.") However, even though defendant is correct that the trial court was empowered to award federal income tax dependency exemption, he fails to indicate why he would be entitled to such an exemption. Defendant claimed the child as a tax exemption on his 2016 tax return, even though he acknowledged that IRS rules provide that it is the parent who provides more than 50% of the support for the child that takes the exemption. Plaintiff left the residence in March 2016 with the child, yet defendant

-10-

felt justified in taking the exemption for the entire year, even though the child resided with plaintiff from March to December 2016. Defendant's brief fails to articulate the legal or factual basis for requesting alternating exemptions. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

## V. ATTORNEY FEES

Finally, defendant argues that the trial court erred when it denied his request that plaintiff pay his attorney fees, which he alleged were the result of plaintiff's false abuse allegations.

"Attorney fees in a divorce action are awarded only as necessary to enable a party to prosecute or defend a suit but are also authorized when the requesting party has been forced to incur expenses as a result of the other party's unreasonable conduct in the course of litigation." *Richards v Richards*, 310 Mich App 683, 700; 874 NW2d 704 (2015). Specifically, MCR 3.206(C) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply. [MCR 3.206(C).]

"Whereas MCR 3.206(C)(2)(a) allows payment of attorney fees based on one party's inability to pay and the other party's ability to do so, MCR 3.206(C)(2)(b) considers only a party's behavior, without reference to the ability to pay." *Richards*, 310 Mich App at 701. Based on defendant's arguments on appeal, he sought fees under MCR 3.206(C)(2)(b).

The trial court concluded:

> [Defendant] requested $50,000.00 in attorney fees. That's ridiculous and denied.
>
> [Plaintiff's] request was more appropriate at $5,000.00, but I'm denying that.
>
> Both of you have taken, at times, frivolous pathways and you've both filed some motions that were unnecessary creating additional expense for the other

party. You both have acted unreasonably and irrationally at times. Neither one of you have presented this court with any documentation that would substantiate what those fees were other than the fact that you say you paid them. I received no invoices, nothing, and that's your burden of proof, not mine to figure out.

So those requests are denied. That's a lot of money to spend on a divorce.

The trial court was well aware of the parties' tactics throughout the proceedings and it cannot be said that the trial court abused its discretion in declining both parties' request for attorney fees.

Affirmed.

/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan