*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON BERNARD CARR,

        Plaintiff-Appellee,

v

CACI ANN CARR,

        Defendant-Appellant.

UNPUBLISHED
July 18, 2019

No. 345820
Calhoun Circuit Court
LC No. 2017-003228-DM

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Defendant, Caci Ann Carr, appeals as of right the trial court's judgment of divorce and its entry of a uniform child-support order. For the reasons more fully explained below, we affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS

Caci married plaintiff, Brandon Carr, in 2015, and they had a daughter in December 2015. Caci was unemployed at the time of their marriage and did not come to the marriage with significant assets. Brandon, however, had a high-paying job earning approximately $120,000 per year, real property, and significant assets. In November 2017, Brandon filed for divorce. At the time of trial, Brandon was 28 years of age and Caci was 27 years of age. In September 2018, the trial court entered a judgment of divorce that divided the marital estate. Relevant to this appeal, the trial court found that few assets were part of the marital estate and it denied Caci's request for spousal support and attorney fees. The judgment also provided that Brandon and Caci had joint legal and physical custody of the child. The court also entered a child-support order.

## II. PROPERTY DIVISION

## A. STANDARD OF REVIEW

Caci argues that the trial court erred by awarding the funds in three bank accounts, a John Deere 4650 tractor, and an account receivable to Brandon as his separate property. "This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and

court rules." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015). The factual findings underlying the trial court's application of the law are reviewed for clear error. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015). A trial court's findings are clearly erroneous when, after reviewing the record, this Court is left with the definite and firm conviction that the trial court made a mistake. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012).

## B. ANALYSIS

Trial courts have broad authority to divide real and personal property that came to either party to a divorce action by reason of the marriage. MCL 552.19; *Reeves v Reeves*, 226 Mich App 490, 493; 575 NW2d 1 (1997). Generally, marital property is property that was acquired or earned by the parties during the marriage, and separate property is generally property that the parties obtained or earned before the marriage. *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). When considering how to divide property in a divorce proceeding, the trial court's first step must be to determine the parties' marital and separate estates. *Reeves*, 226 Mich App at 493-494.

Brandon had three bank accounts: a Chemical Bank account with an account number ending in 6300, a Chemical Bank account that he referred to as the farm account, and a savings account with a credit union. It appears that the farm account predated the marriage; however, the other two accounts appear to have been started and funded during the marriage with marital funds. On the date selected by the trial court for valuing the marital estate, the accounts had a total of $49,893. Although Brandon characterized the farm account and savings account as his own, he did not testify that the accounts were premarital and did not offer any testimony or evidence concerning the balances that these accounts had before the parties' marriage. He further stated that, at one point, he and Caci had just the farm account and used it for all their transactions. Brandon stated that he deposited more than $60,000 into the farm account—during the marriage—between July 2017 and December 2017. From the testimony, one could infer that Brandon and Caci used all three accounts for income received and expenses paid during the marriage. In addition, the record shows that Brandon was essentially the sole income earner and that he made a substantial income throughout the marriage. "[P]roperty earned by one spouse during the existence of a marriage is presumed to be marital property." *Byington v Byington*, 224 Mich App 103, 112-113; 568 NW2d 141 (1997). Finally, as recognized by the trial court, Brandon used all three accounts to conduct the marital estate's transactions.

Nevertheless, the trial court awarded all the funds in the accounts to Brandon because "there was no testimony as to any change in the value of these accounts." In doing so, the trial court held that the parties' failure to present evidence concerning the balance in these accounts at the time of the marriage precluded a finding that the funds were marital funds. When asked to clarify if it was valuing the accounts at zero for purposes of the marital division, the trial court agreed, explaining that the "monies were there prior to this etcetera." The record only showed that Brandon deposited substantial sums of income that came to him by reason of the marriage into those accounts, and there was no evidence that the accounts had premarital funds in them. Accordingly, as there was no evidentiary basis for the court's finding, it clearly erred when it found that the funds in the accounts were all "there prior to this."

Additionally, the evidence strongly suggests that Brandon comingled whatever funds he earned during the marriage with any funds that might have been premarital. In such cases, the funds should be treated as part of the marital estate. *Cunningham*, 289 Mich App at 201-202 ("[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and 'treated by the parties as marital property.' ") (citation omitted). Therefore, although that Caci did not present evidence concerning the balance of the accounts at the start of the marriage, the trial court erred by not addressing whether any balance in the accounts had lost its separate character given the acknowledge use of the accounts for the parties' financial transactions during the marriage, including the deposit of more than $60,000 between July 2017 and December 2017. Consequently, we reverse the trial court's decision to award all the funds to Brandon as his separate property and remand for specific findings. On remand, the trial court shall hold an evidentiary hearing and determine whether the accounts were funded with income earned during the marriage or whether Brandon so comingled marital funds with possible premarital funds that the accounts should be treated as part of the marital estate. The court may, in its discretion, take additional evidence. After making its findings and conclusions, the trial court shall amend the judgment as needed.

Next, the trial court found that the John Deere 4650 tractor that Brandon purchased during the marriage was not part of the marital estate. The court found that because the John Deere 4650 was a replacement for an older tractor that Brandon purchased before the marriage, the new tractor was separate property. The record does not support the court's finding. Brandon sold the old tractor *after* the parties separated, and he deposited the proceeds from the sale into the farm account that was awarded to him. Thus, it is clear that the replacement for the premarital tractor was the proceeds from its sale. The John Deere 4650 was purchased during the marriage, presumably with marital assets, and there is no testimony or documentary evidence indicating that the John Deere 4650 was purchased with Brandon's separate property. Accordingly, the presumption that it is martial property is unrebutted, see *Byington*, 224 Mich App at 112, so the trial court clearly erred by finding the new tractor was Brandon's separate property. We, therefore, reverse this portion of the court's order and remand for findings as to the net value of John Deere 4650 tractor and a proper division of that asset as part of the marital estate.

The trial court also found that a $13,365.97 deposit into the farm account days after Brandon filed for divorce was separate property. Caci argues that this was an error because the money was for an account receivable owed to the marital estate before Brandon filed for divorce. Any debt owed to Brandon that arose during the marriage was presumptively an asset of the estate. See *id.* Brandon testified that, as part of his farm operations, he would sometimes not realize the proceeds from the sale of the crop until later in the year. Accordingly, the trial court should have considered whether the payment after the valuation date reflected payment for goods or services owned by or provided by the marital estate, and it should have divided the value as part of the marital estate if it found that the funds reflected payment for goods or services owned by or provided by the marital estate. To the extent that the trial court refused to consider this evidence because the deposit occurred after the valuation date, it erred as a matter of law. See *LaFleche*, 242 Mich App 692, 695; 619 NW2d 738 (2000) ("A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law.") (quotation marks and citation

omitted). Accordingly, we reverse and remand for specific findings on the nature of the deposit and whether it reflected payment for goods or services owned by the marital estate.

## III. CUSTODY

### A. STANDARD OF REVIEW

Caci next argues that the trial court erred when it awarded the parties joint physical custody because the parties' agreement clearly made her the child's primary physical custodian. In child custody disputes, this Court reviews the trial court's factual findings by examining whether the findings are against the great weight of the evidence. *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994).

### B. ANALYSIS

Brandon moved for "shared custody" with equal parenting time. The parties settled their custody dispute on the record, but specifically declined to address whether the custody arrangement involved sole physical custody or joint physical custody. The trial court approved the partial settlement in June 2018. In July 2018, Caci submitted her trial brief, noting that the provision of alternating parenting time met the definition of joint physical custody under MCL 722.26a(7). However, she argued that not all parents are deemed joint physical custodians just because the child resides alternately with both parents. Rather, she maintained, the trial court should award her sole physical custody because the agreement on parenting time made it clear that she was the primary custodial parent. The matter arose again at trial and the court agreed that it had to examine the parenting-time schedule and award physical custody on the basis of the time allocated to a particular parent. The court added that Caci would be the "primary custodian." The divorce judgment, however, stated that the parties had joint physical custody.

On appeal, Caci claims that the trial court misconstrued the ramifications of the parties' parenting-time agreement and then refused to implement the decision. Caci notes that she and Brandon agreed to a parenting schedule that provided her with significantly more parenting time over the minor child and included significantly more overnight stays. She maintains that the agreement plainly awarded her primary physical custody, which she equates with sole physical custody. Primary physical custody is not a legal classification established by the Legislature under MCL 722.26a(7); rather, it is a shorthand reference that in many cases involves joint physical custody. See *Lieberman v Orr*, 319 Mich App 68, 79-80; 900 NW2d 130 (2017). As a result, whether the parties agreed to sole or joint physical custody depends on the terms of their agreement. See MCL 722.26a(2) (stating that, if the parents agree on joint custody, the court must respect that agreement unless it finds by clear and convincing evidence that joint custody is not in the best interests of the child).

The agreement provided that the child would reside with both parents during alternating periods. Therefore, in the absence of an express term to the contrary, the agreement provided for joint physical custody as defined under MCL 722.26a(7)(a). Consequently, the parties did not agree that Caci would have sole physical custody. Moreover, although it is fair to characterize Caci as having primary physical custody of the minor child, because that term is not a classification recognized under the Child Custody Act, MCL 722.21 *et seq.*, nothing in the law

requires the court to state that one parent is the primary physical custodian. Consequently, because the trial court's award of joint physical custody in the judgment is consistent with the terms of the parties' agreement on custody and with the terms of MCL 722.26a(7)(a), it is unnecessary to alter the judgment to include a statement that Caci is the primary custodial parent.

## IV. CHILD SUPPORT

### A. PRESERVATION AND STANDARD OF REVIEW

Caci argues that the trial court erred in several respects when it applied Michigan's Child Support Formula (MCSF). This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and the MCSF. See *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). We review for clear error the trial court's factual findings underlying its application of the MCSF for clear error, and we review for an abuse of discretion the trial court's exercise of discretion under the MCSF. *Id.* A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.*

Brandon argues that Caci waived her claims of error regarding the trial court's decision to impute income to her by failing to object to the trial court's factual findings and failing to specifically challenge the trial court's application of the law after the trial court orally stated its findings and conclusions. Caci did not have to object to the trial court's findings in order to challenge them on appeal. MCR 2.517(A)(7). As for the remaining claims of error, the claims would be preserved if they were raised before or addressed by the trial court. *Loutts*, 298 Mich App at 23. Here, the record reflects that each issue raised on appeal was raised before and/or decided by the trial court. Accordingly, the issues are preserved and not waived.

### B. ANALYSIS

### 1. IMPUTATION OF INCOME

Caci contends that the trial court erred as a matter of law when it imputed income to her without following the requirements of the MCSF and when it refused to adjust the imputed income to reflect the childcare costs that she might incur were she to return to work.

As a general rule, trial courts are required to strictly comply with the requirements of the MCSF when calculating child support. *Borowsky*, 273 Mich App at 673. The first step in calculating child support is to determine the parents' income. *Id.* The MCSF provides that a parent's income "includes the potential income that the parent could earn, subject to that parent's actual ability," if the parent is "voluntarily unemployed or underemployed, or has an unexercised ability to earn" income. 2017 MCSF 2.01(G). Accordingly, if a trial court finds that the parent is voluntarily unemployed, underemployed, or has an unexercised ability to earn income, the court must determine the amount of unearned income and impute it to that parent.

Yet, the MCSF provides strict limitations on a trial court's ability to impute income. The court may only impute income to a parent if it finds that the parent has the "actual ability to earn and a reasonable likelihood of earning the potential income." 2017 MCSF 2.01(G)(2). And when figuring the amount of potential income, trial courts must consider the following factors:

(a) Prior employment experience and history, including reasons for any termination or changes in employment.

(b) Educational level and any special skills or training.

(c) Physical and mental disabilities that may affect a parent's ability to work, or to obtain or maintain gainful employment.

(d) Availability for work (exclude periods when a parent could not work or seek work, e.g., hospitalization, incarceration, debilitating illness, etc.).

(e) Availability of opportunities to work in the local geographical area.

(f) The prevailing wage rates and number of hours of available work in the local geographical area.

(g) Diligence exercised in seeking appropriate employment.

(h) Evidence that the parent in question is able to earn the imputed income.

(i) Personal history, including present marital status, present means of support, criminal record, ability to drive, and access to transportation, etc.

(j) The presence of the parties' children in the parent's home and its impact on that parent's earnings.

(k) Whether there has been a significant reduction in income compared to the period that preceded the filing of the initial complaint or the motion for modification. [2017 MCSF 2.01(G)(2).]

Additionally, a trial court's calculation of the amount of potential income to be imputed to a parent "should account for additional costs associated with earning the potential income such as childcare and taxes that a parent would pay on the imputed income." 2017 MCSF 2.01(G)(3). As this Court has explained, trial courts must consult these factors to ensure that adequate fact-finding supports the finding that the parent has an actual ability and likelihood of earning the imputed income. *Clarke v Clarke*, 297 Mich App 172, 184; 823 NW2d 318 (2012). An imputation that does not involve consideration of the listed criteria is speculative and violates the requirement that child support be determined on the basis of the actual resources of the parents. *Ghidotti v Barber*, 459 Mich 189, 199-200; 586 NW2d 883 (1998).

After hearing the proofs, the trial court found that Caci could work, notwithstanding her testimony to the contrary. Although the trial court found that Caci could work, it did not make any findings about her actual ability to earn income with these conditions and did not find whether there was a reasonable likelihood that she would earn the potential income, which it was required to do before it could include potential income when calculating Caci's income. See 2017 MCSF 2.01(G); 2017 MCSF 2.01(G)(2). Additionally, it did not directly address any of the factors provided under 2017 MCSF 2.01(G)(2)(a) to (k). Instead, the court briefly noted that

Caci had previously been employed and had a limited education, but it did not discuss the evidence that suggested that her ability to work was limited by her various ailments and did not state how her educational level affected her earning potential. See 2017 MCSF 2.01(G)(2)(a). The court also did not discuss whether Caci's conditions affected the type of work that she could perform, the amount of hours that she could work in any given week, and whether there was work available in her community for someone with those limitations. See 2017 MCSF 2.01(G)(2)(c) through (e). Accordingly, although the court's brief statement implicated some of the factors, the trial court failed to "articulate information about each factor" and how that information applied to its finding that Caci had "the actual ability and reasonable likelihood of earning" the potential income. 2017 MCSF 2.01(G)(4)(c). Contrary to Brandon's argument on appeal, 2017 MCSF 2.01(G)(4)(c) clearly requires trial courts to address *each* factor—if only to state that it does not apply—and to "articulate" the information that is relevant to that factor and the failure to do so causes the imputation to be out of compliance with the MCSF. The trial court's findings were inadequate under the MCSF. See *Ghidotti*, 459 Mich at 199-200.

Moreover, it the trial court improperly inferred that—because Caci could work at some level—she could earn minimum wage and work full-time. Imputing income on the basis of such assumptions without examining the parent's "actual ability and likelihood" is a violation of law and does not comply with the MCSF. See 2017 MCSF 2.01(G)(4)(a).

Finally, the trial court failed to adequately address the costs that Caci might incur to earn the potential income even though the MCSF provides that courts "should account for the additional costs associated with earning the potential income" when imputing potential income. 2017 MCSF 2.01(G)(3). When Caci raised the matter posttrial, the trial court dismissed her proofs because she had not actually incurred any childcare expenses. But the MCSF does not impose any such requirement. Rather, it requires trial courts to impute "potential" income with deductions for the necessarily "potential" costs associated with the "potential" income. See 2017 MCSF 2.01(G)(3).[1]

---

[1] On appeal, Caci invites this Court to hold that the record evidence was insufficient to support the imputation of income to her or to make its own findings on de novo review. Caci cites *Fletcher*, 447 Mich at 882, for the proposition that this Court may make its own findings on de novo review. However, our Supreme Court there held that an appellate court's review of custody matters is not de novo. *Id.* And this Court is ill-equipped to make findings of fact, especially where credibility is at issue. See *Stallworth v Stallworth*, 275 Mich App 282, 285; 738 NW2d 264 (2007) (noting that the trial court is in the best position to judge witness credibility and stating that this Court will not second-guess credibility determinations). Here, although the parties did not develop the record on Caci's health, there was sufficient evidence from which the trial court could have concluded that Caci had no ability to work or a limited ability to work. Yet, the trial court could also have found that Caci's testimony about her limitations was not credible in whole or part. On that basis, the trial court could have found that Caci had some unexercised ability to earn income with or without accommodations such as those that enable her to work at the stable. Therefore, we decline to make our own findings.

In sum, the trial court erred as a matter of law when it imputed income to Caci without making the required findings concerning her actual ability and likelihood of earning the potential income and without analyzing the required factors, and without examining the potential costs associated with earning the imputed income. Accordingly, we reverse the court's decision to impute income to Caci. We further remand this case to the trial court for a hearing to resolve the dispute over Caci's potential income, and, if necessary, enter an amended order of child support.

## 2. DEVIATION FROM MCSF

Caci also argues that the trial court abused its discretion when it refused to modify the number of overnights used to calculate child support to reflect that she would likely be caring for the child during periods of the child's residency with Brandon under 2017 MCSF 1.04(E)(16). A trial court has the discretion to deviate from the child-support formula if it determines that application of the formula would lead to an unjust or inappropriate result. *Borowsky*, 273 Mich App at 673. When deviating from the formula, the trial court must still "follow the formula except for the provisions that create an unjust or inappropriate result." 2017 MCSF 1.04(B). "Strict application of the formula may produce an unjust result" when one "parent provides a substantial amount of a child's day-time care and directly contributes toward a significantly greater share of the child's costs than those reflected by the overnights used to calculate the offset for parental time." 2017 MCSF 1.04(E)(16).

Caci maintained that Brandon frequently worked long hours. Because the parties' parenting-time order provided each parent with the right of first refusal if the other parent would be unable to parent the child for two or more hours, Caci argued that she would in effect be parenting the child during Brandon's work shift on those days when the child resided with Brandon. For that reason, she felt that she would likely incur additional expenses and asked the trial court to modify Brandon's overnights to reflect the fact that she would be caring for the child. However, Caci's argument with regard to the right of first refusal was speculative and did not establish that application of the formula would be unjust. The parenting-time arrangement did not require Caci to assert her right of first refusal, and there was no evidence that she would invariably be ready, willing, and able to do so for each and every day that Brandon worked. There was also no evidence that Brandon could not arrange his work schedule to permit him to parent the child during those periods when the child resides with him. Thus, the trial court did not abuse its discretion when it refused to deviate from the formula by altering the overnights on the assumption that Caci would frequently be parenting the child during Brandon's parenting time. However, if over time Caci provides child care for greater periods of time than contemplated by the parties at the time of the court's order, the court must reconsider the deviation from the formula in light of the evidence.

## 3. RETROACTIVE SUPPORT ORDER

Caci argues that the trial court erred when it refused to order that the child-support order take effect retroactively. Although Caci raised this claim of error in a question presented to this Court in her brief on appeal, she did not discuss the applicable law, the facts of this case, or the reason for the trial court's decision. By failing to offer any meaningful analysis, she has abandoned this claim of error on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

## V. SPOUSAL SUPPORT

## A. STANDARD OF REVIEW

Caci next argues that the trial court abused its discretion when it denied her request for spousal support. This Court reviews a trial court's decision whether to order spousal support for an abuse of discretion. *Loutts*, 298 Mich App at 30.

## B. ANALYSIS

The Legislature has authorized trial courts to invade a party's separate property or order spousal support as is "just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case." MCL 552.23(1). "The primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal support must be based on what is just and reasonable considering the circumstances of the case." *Loutts*, 298 Mich App at 32. Michigan courts routinely consider the following factors when deciding whether to award spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id.* at 31 (quotation marks and citations omitted).]

The parties are entitled to have individual consideration on the facts of their case, and the trial court may not employ a limited, arbitrary, or formulaic approach to a support determination. *Myland v Myland*, 290 Mich App 691, 696; 804 NW2d 124 (2010). Rather, the trial court should make specific factual findings on the factors that are relevant to the particular case. *Id.* at 695.

The trial court addressed the factors set forth in MCR 2.517(A)(2), finding that Brandon had the resources to pay spousal support and would leave the marriage with more wealth, but it did not agree that those factors alone warranted support. The court placed weight on the fact that the marriage was short, but it did not appear to excessively weigh that factor. The court considered the short duration of the marriage in conjunction with the evidence that Caci was relatively young and that—without spousal support—Caci would have a lifestyle after the marriage that was unchanged from that which she had before the marriage. The trial court impliedly found that Caci could return to her premarital situation in which she relied on her mother for significant support. More importantly, the trial court found that Caci had an unrealized ability to earn more income and had inflated her claimed needs beyond what was reasonable.

To the extent that Caci had the unrestricted ability to work full-time and could continue to indefinitely rely on her family for support with housing and living expenses, the trial court might reasonably conclude that Caci would not be impoverished. But it was not clear from the

record that Caci would be able to rely on her mother to the same degree that she had previously relied on her, and the record in that respect was not adequate to support such a finding. This is especially true given that Caci now has a young child to care for in addition to meeting her own needs. Moreover, the trial court found that Caci suffered from various medical conditions, which would presumably affect her ability to work and care for a young child. Yet, the court inexplicably found that she would be able to work full-time in her community without any restrictions or limitations. The trial court also ignored the evidence that Caci's lifestyle had improved with the marriage and determined that it was not inequitable to expect Caci to return to her previous lifestyle even while Brandon's lifestyle had improved during the course of the marriage. Brandon continued to have a high-paying job and had improved his real property, which was in the process of reclamation and which he would likely own in his own name at some point in the future. Brandon had also acquired new farm equipment for his farming operation, and his farm operation would likely improve with the reclamation of a gravel pit and the acquisition of new equipment. Additionally, after the divorce, Brandon would no longer have to maintain Caci's vehicle payments, her insurance, or her other expenses. In this way, Brandon's lifestyle improved after the divorce while Caci's regressed.

We conclude that the trial court's decision was inequitable on its face—especially given the extreme disparity in the parties' income and the apportionment of the assets. On this record, the evidence showed that Caci would suffer a substantial reduction in her lifestyle during the transition from married life to single life and that she would be compelled to seek support from family members to avoid being impoverished when Brandon had the ability to provide limited support to help Caci's transition. See *Magee v Magee*, 218 Mich App 158, 163-164; 553 NW2d 363 (1996) (holding that the trial court abused its discretion because the evidence showed that the award left the plaintiff with no reduction in his financial position whereas it left the defendant impoverished in the short term). The trial court abused its discretion when it determined that Caci would not require any spousal support for any period. Consequently, we reverse the trial court's decision in this respect and vacate the trial court's judgment to the extent that it denied Caci's request for spousal support. We instruct the trial court to reconsider whether to order support after it resolves the factual dispute concerning whether and to what extent income should be imputed to Caci for purposes of calculating child support.

## VI. ATTORNEY FEES

Finally, Caci argues that the trial court erred when it denied her request for attorney fees. Under MCR 3.206(D),

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

      (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

In addition, Michigan courts have recognized that a trial court may award a party his or her attorney fees when he or she was forced to incur the fees as a result of the opposing party's unreasonable conduct. See *Borowsky*, 273 Mich App at 687. The party requesting the fees has the burden of showing facts sufficient to justify the award. *Id.*

Caci argued that the trial court should order Brandon to pay her attorney fees as authorized under MCR 3.206(D). The trial court found that Brandon had not engaged in unreasonable conduct and denied the award. The record does not show that either party engaged in the kind of unreasonable litigation tactics that might justify an award of attorney fees as stated under *Borowsky*, 273 Mich App at 687. Therefore, the trial court did not clearly err when it found that neither party had engaged in unreasonable conduct that unnecessarily increased the cost of litigation.

Caci did, however, present evidence that she incurred an estimated $12,000 in attorney fees, that she incurred various costs totaling approximately $1,700, that she had no ability to pay the costs and fees, and that she had to borrow $5,000 from family to pay her fees. There was also ample evidence that Brandon had the ability to pay all or part of Caci's fees. Despite this evidence, the trial court completely failed to address her request for attorney fees under MCR 3.206(D). Because the trial court failed to make any factual findings or provide any rational for its decision to deny fees premised on need, this Court cannot review the trial court's decision. On remand, the trial court shall specifically address Caci's request for attorney fees under MCR 3.206(D)(2)(a).

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. Caci may tax costs. MCR 7.219(A).


/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

-11-